[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Noling,* Slip Opinion No. 2016-Ohio-8252.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8252

THE STATE OF OHIO, APPELLEE *v*. NOLING, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Noling,* Slip Opinion No. 2016-Ohio-8252.]

*Criminal law—R.C. 2953.73—Postconviction DNA testing—Appellate jurisdiction—R.C. 2953.73(E)(1), which denies appeals of right from rejections of applications for DNA testing in cases in which the death penalty is imposed, is unconstitutional—Unconstitutional portions of R.C. 2953.73 are severed—After severance, R.C. 2953.73 entitles capital offenders to appeals of right to this court.*

(No. 2014-1377—Submitted May 31, 2016—Decided December 21, 2016.)

APPEAL from the Court of Common Pleas of Portage County, No. 1995-CR-220.

_____

O'CONNOR, C.J.

**RELEVANT BACKGROUND**

{¶ 1} A jury found Tyrone Noling guilty of the April 1990 aggravated murders of Bearnhardt and Cora Hartig in Portage County, Ohio. The trial court

sentenced him to death. On direct appeal, the court of appeals and this court affirmed the convictions and death sentences. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88 ("*Noling I*").

{¶ 2} Noling has made numerous applications for postconviction relief. This appeal arises from the Portage County Common Pleas Court's denial of his 2013 amended application for postconviction DNA testing pursuant to Ohio's statutory scheme, R.C. 2953.71 through 2953.84. Noling filed an appeal with the 11th District Court of Appeals and sought a discretionary jurisdictional appeal with this court. The court of appeals dismissed Noling's appeal pursuant to R.C. 2953.73(E)(1), which grants appellate review of the denial of DNA applications from capital offenders to the Supreme Court of Ohio exclusively.

{¶ 3} We accepted Noling's jurisdictional appeal from the court of common pleas on the following proposition of law:

> Ohio Revised Code 2953.73(E)(1) violates both the Eighth and Fourteenth Amendments of the United States Constitution as it: (1) discriminates between capital and non-capital criminal defendants, (2) fails to provide appellate review, and (3) results in the arbitrary and capricious application of the death penalty. Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

143 Ohio St.3d 1477, 2015-Ohio-3958, 38 N.E.3d 899.

{¶ 4} Although the parties' briefs go into detail concerning the merits of the application for DNA testing, the question before us is a constitutional one concerning the statutory procedure for appealing the denial of an application for postconviction DNA testing, not the merits of Noling's application itself.

**{¶ 5}** The challenged statute, R.C. 2953.73(E)(1), sets forth the procedure by which an offender sentenced to death may appeal the trial court's denial of an application for postconviction DNA testing. According to the statute, the capital offender "may seek leave of the supreme court to appeal the rejection to the supreme court." *Id.* The statute departs from typical appellate procedure by skipping the court of appeals altogether. And it is also distinct from the procedure in the initial appeal of a capital sentence, which comes straight to this court on a direct, not a discretionary, appeal. Article IV, Section 2(B)(2)(c), Ohio Constitution.

**{¶ 6}** To "seek leave," the capital offender must file a notice of appeal and memorandum in support of jurisdiction with this court. R.C. 2953.73(E)(1). At least four justices must vote to accept jurisdiction before an appeal may proceed. Article IV, Section 2(A), Ohio Constitution; S.Ct.Prac.R. 7.08(B). If a majority of justices declines to assert jurisdiction over the claim, the decision of the common pleas court will stand. After the denial of a postconviction DNA application, however, R.C. 2953.73(E)(2) provides a noncapital offender the right to appeal that determination in the court of appeals. The appellate court has no discretion to decline to consider the case and must hear the appeal.

**{¶ 7}** Noling argues that because the statutory scheme denies appeals of right to those sentenced to death while guaranteeing appeals to noncapital offenders, the scheme denies capital offenders their fundamental rights— specifically, their state and federal constitutional rights to due process and equal protection and the federal constitution's prohibition of cruel and unusual punishment. The state counters that postconviction relief is civil in nature, not criminal, and thus, no fundamental right to appeal exists. The state further contends that the scheme is constitutionally permissible because the state has a rational basis for the statute's different appeal paths and because the Eighth Amendment to the

United States Constitution does not require a specific appellate process for postconviction DNA-testing denials.

{¶ 8} We agree that R.C. 2953.73(E)(1) violates the equal protection right guaranteed by the United States and Ohio Constitutions. Because we can decide this case on equal protection grounds, we do not consider Noling's due-process claims. But we also hold that the unconstitutional portion of the statute can be excised to create a constitutionally sound procedure that provides capital offenders an appeal of right to this court. We therefore apply the severance remedy, strike the unconstitutional portions of the statute, and permit the remainder of R.C. 2953.73(E) to stand. We find that our constitutional analysis applies equally to a related section of the statutory scheme, R.C. 2953.72(A)(8), that summarizes the procedure for appealing a denial of postconviction DNA testing, and apply the severance remedy to that section as well. In accordance with our holding and remedy, Noling will be permitted an appeal of right to this court from the trial court's denial of his amended application for postconviction DNA testing.

## ANALYSIS

### *Standard of review*

{¶ 9} We begin with the premise that statutes are presumed constitutional. R.C. 1.47.

{¶ 10} To find a statute unconstitutional, we must determine "beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. "[D]oubts regarding the validity of a legislative enactment are to be resolved in favor of the statute." *State v. Smith*, 80 Ohio St.3d 89, 99-100, 684 N.E.2d 668 (1997), citing *State v. Gill*, 63 Ohio St.3d 53, 55, 584 N.E.2d 1200 (1992).

{¶ 11} Because the Equal Protection Clause of the Ohio Constitution is coextensive with, or stronger than, that of the federal Constitution, we cite both

4

throughout this opinion. *E.g., State v. Mole*, ___ Ohio St.3d __, 2016-Ohio-5124, ___ N.E.3d ___, ¶ 14-23 (Article I, Section 2 of Ohio's Constitution, the Equal Protection Clause, provides equal or greater protections when compared to those arising from the United States Constitution's Fourteenth Amendment); *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999) ("the federal and Ohio Equal Protection Clauses are to be construed and analyzed identically").

### *Equal protection*

{¶ 12} The federal Equal Protection Clause mandates that the state may not "deny to any person within its jurisdiction the equal protection of the laws." Fourteenth Amendment to the U.S. Constitution, Section 1. Similarly, the Ohio Constitution, Article I, Section 2 guarantees that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit." But these admonishments shall "not deny to [the] State the power to treat different classes of persons in different ways." *Eisenstadt v. Baird*, 405 U.S. 438, 446-447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), citing *Barbier v. Connolly*, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885). Legislative power is not boundless, however.

{¶ 13} "The Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *United States. v. Windsor*, __ U.S. __, 133 S.Ct. 2675, 2693, 186 L.Ed.2d 808 (2013), citing *Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534-535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). In other words, equal protection prohibits treating similar groups differently based on criteria that are unrelated to the purpose of the law. *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). "[A]ll persons similarly situated should be treated alike," *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and "a legislative classification must be reasonable, not arbitrary, and must bear a rational relationship to a permissible

governmental objective," *Felske v. Daugherty*, 64 Ohio St.2d 89, 92, 413 N.E.2d 809 (1980). *See also Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct.1910, 100 L.Ed.2d 465 (1988). While the challenging party has the burden to negate "any reasonably conceivable state of facts that could provide a rational basis for the classification," *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), the state must offer some "rational speculation" to support it. *Id.* at 315.

### *Statute's classification*

{¶ 14} "In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment * * * [courts] apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose." *Clark* at 461.

{¶ 15} While asserting that R.C. 2953.73(E)(1) cannot survive even this rational-basis scrutiny, Noling urges us to apply strict scrutiny to the statute, the most stringent level of analysis, asserting that the law impedes access to the courts, a fundamental right. But that argument is unsound.

{¶ 16} This court has established that "a postconviction proceeding is not an appeal of a criminal conviction but rather, is a collateral, civil attack on a criminal judgment." *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). And "[t]he right to file a postconviction petition is a statutory right, not a constitutional right." *Id.* *See also Murray v. Giarratano*, 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 554, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Steffen* at 410. Because an appeal of the denial of postconviction DNA testing does not implicate a fundamental constitutional right, we do not apply strict scrutiny.

6

**{¶ 17}** Noling has offered no evidence that intermediate scrutiny, the next level of deference in equal-protection law, *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 13, should be applied in this case. Because this case is not entitled to elevated scrutiny, we apply the rational-basis test, the standard most deferential to the legislature. *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 32.

**{¶ 18}** Before we proceed to apply the test, we note that the attorney general, as amicus curiae, advances the argument that the rational-basis test is not applicable because capital and noncapital offenders are not similarly situated. As an initial matter, this court has previously held that "amici curiae are not parties to an action and may not, therefore, interject issues and claims not raised by parties." *State ex rel. Citizen Action for a Livable Montgomery v. Hamilton Cty. Bd. of Elections*, 115 Ohio St.3d 437, 2007-Ohio-5379, 875 N.E.2d 902, ¶ 26, citing *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 394, 584 N.E.2d 70 (8th Dist.1990). Although the state notes that this court has previously reasoned that " 'the reality is that capital and noncapital defendants were not treated similarly,' " quoting *Smith*, 80 Ohio St.3d at 100, 684 N.E.2d 668, it does not directly argue that the rational-basis test is inapplicable. But even considering the attorney general's claims, we would still find capital and noncapital offenders similarly situated here.

**{¶ 19}** The case law and statutes cited by the attorney general are inapposite because they are focused on imposition of a sentence. The cases discuss capital sentencing, and the statutes set forth procedures for cases in which an accused is defending against a capital charge. In contrast, the statutory scheme relevant here concerns applications for postconviction DNA testing. It is unrelated to sentencing. That certain applicants are sentenced to death and others to prison terms is nearly irrelevant under the statute. And we do not agree with the attorney general that the two classes are dissimilar merely because the description of what testing is

"outcome determinative" is slightly broader for capital offenders. R.C. 2953.71(L). Under the statute, capital and noncapital offenders follow the same application process for DNA testing, R.C. 2953.72, and the application is subject to the same level of scrutiny in the trial court, R.C. 2953.73(D).

{¶ 20} Moving to application of the rational-basis test, the Equal Protection Clause is satisfied if "there is a plausible policy reason for the classification." *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). We may find a statute unconstitutional only if "the General Assembly's action lacked all rational relation to the legitimate state interest." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 72. Under this test, the Equal Protection Clause is satisfied if "there is a plausible policy reason for the classification." *Nordlinger* at 11.

{¶ 21} In this case, we consider whether there exists a legitimate governmental purpose in affording noncapital defendants an appeal of right of the denial of their postconviction DNA-testing application, but affording capital defendants only a discretionary appeal of the same denial. Although we apply the rational-basis test and give all due deference to the legislature, we are mindful that this case involves a person sentenced to death, and "the finality of the [death] sentence imposed warrants protections that may or may not be required in other cases." *Ake v. Oklahoma*, 470 U.S. 68, 87, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (Burger, C.J., concurring).

### *Legitimate governmental purpose*

{¶ 22} In its merit brief, the state offers the following purpose: "ensuring that the final judgments of its courts are expeditiously enforced." Are we to take this to mean that expeditious enforcement of the death penalty is the guiding factor and goal? Are we to value speed over certainty? Of all cases that cry out for certainty, it is cases that result in the extinguishing of a human life. If, however, the generic expeditious enforcement is the basis of the state's argument, even a

cursory investigation reveals that this rationale is faulty. *See State ex rel. Nyitray v. Indus. Comm.*, 2 Ohio St.3d 173, 176, 443 N.E.2d 962 (1983). Indeed, expedience is subverted by the statutory scheme.

**{¶ 23}** Requiring the parties to draft memos in support of and in opposition to jurisdiction takes the parties additional time. The court rules grant the appellant 45 days from the entry of the lower court's judgment to file a notice of appeal and a memorandum in support of jurisdiction. S.Ct.Prac.R. 7.01(A)(1). After that filing, the appellee has 30 days to file a response to the memorandum in support of jurisdiction. S.Ct.Prac.R. 7.03(A)(1). After the time for filing a response passes, the court must review the filings and decide whether to accept jurisdiction. S.Ct.Prac.R. 7.08(B). If the court agrees to accept jurisdiction, it will issue an order to the clerk of the common pleas court to certify and submit the case record to the clerk of the Supreme Court within 20 days of the issuance of the order. S.Ct.Prac.R. 15.03(A). After the clerk files the record, the appellant has 40 days to file a merit brief. S.Ct.Prac.R. 16.02(A)(2). If each filing and submission takes the maximum amount of time, this process will last at least 135 days before a merit brief is ever filed. That number is conservative because it does not include any time for the justices to consider the appeal, deliberate, vote, and release a decision.

**{¶ 24}** In contrast, an appeal as of right from a case originating in the court of appeals (the most similar appeal currently covered by the Supreme Court Rules of Practice) goes from judgment entry to merit briefing faster. For appeals of right from courts of appeals, an appellant must file a notice of appeal within 45 days of the entry of judgment, S.Ct.Prac.R. 6.01, and must file a merit brief within 40 days of the clerk's submission of the record, S.Ct.Prac.R. 16.02. Although the rules do not specify a time limit for filing the record, assuming it takes the 20 days permitted in a discretionary appeal, this court would still have a merit brief in 105 days in an appeal of right, at least a month faster than one would even potentially be filed in a discretionary appeal. If the state's legitimate interest is in expeditious enforcement

of judgments, that interest is better advanced by permitting capital offenders an appeal of right. We find that providing only a discretionary appeal is not rationally related to the governmental purpose of expeditiously enforcing final judgments and, accordingly, the law does not meet the rational-basis test and violates both the federal and state equal-protection clauses.

*Attorney general's rational-basis claims*

{¶ 25} As with the attorney general's claim that capital and noncapital offenders are not similarly situated, we need not address the attorney general's suggestions of additional legitimate government purposes underlying R.C. 2953.73(E)(1). However, we will briefly explain why these suggestions are not a rational basis for providing a discretionary appeal.

{¶ 26} First, the attorney general suggests that the appellate process in R.C. 2953.73(E)(1) parallels the process for appealing an initial death-penalty sentence. But this is not true. While both processes bypass the court of appeals, an offender appealing a death sentence is entitled to an appeal of right to this court. Here, the capital offender is offered only a discretionary appeal.

{¶ 27} Second, the attorney general suggests that the General Assembly drafted the process to accord with ambiguous constitutional text that requires Supreme Court review "in cases in which the death penalty has been imposed." Ohio Constitution, Article IV, Section 2(B)(2)(c). But the full text of that section requires Supreme Court review "as a matter of right," not discretionary review, which is the only avenue R.C. 2953.73(E)(1) provides.

{¶ 28} Third, the attorney general suggests that distinct review paths are appropriate because capital offenders have broader access to testing. Capital offenders are permitted to seek postconviction DNA testing related to the offense itself *or* to aggravating circumstances supporting the capital sentence, while noncapital offenders are limited to the former. R.C. 2953.71(L). The attorney general notes that "broader access to testing logically results in more appeals in

each case, and so justifies discretionary appellate review." The state fails to clarify how the presence of more appeals is a rational basis for discretionary review. The "logical" cause and effect analysis is also faulty. In the nearly 13 years since this law has been in effect, only three capital offenders have sought review from this court. And the General Assembly was aware of this fact, as evidenced by an Ohio Legislative Service Commission ("LSC") report that there would be few capital appeals, given the relatively small number of death-row offenders and the fact that many of them would have no bases for postconviction DNA testing under the law. Fiscal Note and Local Impact Statement for 2003 Sub.S.B. No. 11 ("S.B. 11"), 150 Ohio Laws, Part IV, 6498-6526.

{¶ 29} Fourth, the attorney general suggests that the discretionary-appeal process is less susceptible to delay. We have already concluded that discretionary review significantly increases the average amount of time a case is pending before disposition as compared to an appeal of right, so this rationale is faulty.

{¶ 30} Finally, the attorney general suggests that the single-tier system of review promotes consistency, given that the Supreme Court is responsible for handling direct appeals of death-penalty cases. We agree, but we identify the relevant disparate treatment not to be the lack of an appeal to the court of appeals, but instead to the denial of direct appeal to the Supreme Court for capital offenders. We see no means by which discretionary review promotes consistency, given that we do not have discretion to reject a challenge to a conviction imposing the death sentence.

{¶ 31} Finding no legitimate purpose in a two-track appellate process that discriminates between capital and noncapital offenders, we hold that R.C. 2953.73(E)(1) is unconstitutional in violation of both state and federal principles of equal protection.

### Eighth Amendment

{¶ 32} The United States Supreme Court has ruled that the Eighth Amendment prohibition against cruel and unusual punishment is not violated when a capital offender has no opportunity for postconviction relief. Specifically, in finding no Eighth Amendment violation, the court noted that "[s]tate collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings." *Murray*, 492 U.S. at 10, 109 S.Ct. 2765, 106 L.Ed.2d 1. Even here, where we have determined that capital offenders have a state-created liberty interest in postconviction DNA testing, we cannot find that the interest broadens the protections of the Eighth Amendment beyond the bounds set by the Supreme Court. Because the high court has held that imposition of the death penalty is not arbitrary and egregious, even without the option of postconviction relief, we likewise hold that a statute that provides for postconviction relief, even without effective opportunity for appeal, is not arbitrary and egregious.

### Remedy

{¶ 33} As discussed above, we do not hold that the entire postconviction DNA-testing statute is unconstitutional. Our holding is limited to the portion of the statute that affords capital offenders a discretionary appeal instead of an appeal as of right. R.C. 1.50 provides that when only a portion of a statute is "invalid," that portion may be severed: "the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision, and to this end, the provisions are severable."

{¶ 34} Ohio law establishes a three-part test to determine whether an invalid portion of a statute can be severed or the entire law must be struck down:

"(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the

12

whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"

*Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927), quoting *State v. Bickford*, 28 N.D. 36, 147 N.W. 407, 409 (1913).

{¶ 35} A portion of a statute can be excised only when the answer to the first question is yes and the answers to the second and third questions are no. *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 16 (severance was not appropriate because the severance of the requested word would still make the statute overbroad and unconstitutional). *See also Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 20-22 (severance was appropriate because each sentence of the statute could stand by itself, the general intent of the legislature was still given effect by the portions not severed, and no words needed to be added to separate the constitutional part from the unconstitutional part).

{¶ 36} In this case, we conclude that severance of the offending portion of the statute is proper under *Geiger*.

*Severance of R.C. 2953.73(E)*

{¶ 37} The first question requires us to determine whether the constitutional parts of the statute may be read and stand by themselves following the severance. *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 523, 644 N.E.2d 369 (1994).

{¶ 38} The sentence at issue is found in R.C. 2953.73(E)(1) and states, "If the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the offender may seek leave of the supreme court to appeal the rejection to the supreme court * * *." By severing the phrase "seek leave of the supreme court to," we remove the offending

discretionary-review process. The statute then permissibly reads, "If the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the offender may appeal the rejection to the supreme court."

{¶ 39} Removing the unconstitutional language concerning a discretionary appeal simply leaves capital offenders with an appeal of right, and the severed statute is readily comprehensible. The answer to the first *Geiger* question is yes.

{¶ 40} As to the second question, we conclude that the unconstitutional part of the statute is not so connected with the general scope of the whole as to make it impossible to give effect to the apparent intent of the legislature if the clause is stricken. The purpose of the statute is to outline the procedure for postconviction DNA testing, and the purpose of this specific section is to describe appellate rights.

{¶ 41} The right to an appeal was apparently very important to the legislature, such that it added an appeal provision prior to passage of the law. As introduced, S.B. 11 provided that "[a] judgment of a court entered under division (E) of this section is final and is not appealable by any person to any court." But at hearings before the Senate Judiciary on Criminal Justice Committee, a witness for the Ohio Common Pleas Judges Association testified that the lack of an appeal process would leave the prosecuting attorney as a "gatekeeper." Notes, *Hannah Capitol Collection* (Mar. 19, 2003). When the committee voted the bill out of conference, it contained the appeal process set forth in the enacted statute— affording capital offenders a discretionary appeal to this court and noncapital offenders an appeal of right to a district court of appeals, with both classes of offenders subject to strict limitations on the claims that may be made on appeal. R.C. 2953.72(A)(8).

{¶ 42} The severance we perform modifies the appeal process for a very limited number of eligible offenders. It does not impact the statute's overall goal of setting forth a scheme for postconviction DNA testing or the provision's specific

14

goal of providing a limited appellate process for offenders. The answer to the second *Geiger* question is no.

{¶ 43} The third question queries whether it is necessary to insert any words or terms to give effect to the constitutional part of the statute. In this case, only severance is necessary to render the statute constitutional and, as discussed in relation to the first question, the remaining clause is coherent and effective in its own right. The answer to the third *Geiger* question is no.

*Constitutionality of severed R.C. 2953.73(E)*

{¶ 44} Having excised the offending language in accordance with *Geiger*, we conclude that the statute is rendered constitutional. By providing an appeal of right to capital offenders, the revised statute avoids equal-protection violations by providing both capital and noncapital offenders the right to an appellate review and permits the state to achieve its objective of efficient enforcements of judgments by removing an often lengthy jurisdictional review period. For the reasons that we articulated in *Smith*, 80 Ohio St.3d at 100-102, 684 N.E.2d 668, we reiterate that providing those convicted of capital crimes with a single appeal of right while granting those convicted of noncapital crimes an appeal of right and a possible discretionary appeal is not unconstitutional.

{¶ 45} Relying on our opinion in *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, the dissent states that "[t]he duty to review error allegedly occurring in postconviction proceedings in death-penalty cases belongs in the first instance to the appellate courts of this state." Dissenting opinion at ¶ 79. In dicta, *Davis* states that "[a] holding that the Supreme Court has exclusive jurisdiction over *all matters* relating to a death-penalty case would be contrary" to the constitution. (Emphasis sic.) *Id.* at ¶ 22. Our holding today is not contrary to *Davis*. Indeed, we have already considered the narrower question of whether R.C. 2953.73(E) conflicts with the Ohio Constitution's jurisdictional provisions and held that it does not. *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d

1095, ¶ 20 ("*Noling II*")  In that case, the first time we considered a postconviction-DNA-testing appeal from Noling, we held that "this court has concurrent appellate jurisdiction with courts of appeals to review postconviction judgments and final orders in cases in which the death penalty has been imposed." *Id*.

*The remedy is sound*

**{¶ 46}** The dissent makes two related objections to this reasonable, limited remedy:  that the remedy rewrites the statute and that the remedy is contrary to the court's previous use of the severance remedy.  The dissent also rejects the notion that in applying the severance remedy, we should, whenever possible, respect the role of the legislature by limiting our severance to only those unconstitutional portions of the statute in order to most effectively preserve the General Assembly's goal.  We address these arguments in turn.

**{¶ 47}** Foremost, the remedy does not rewrite the statute.  The dissent disputes that we can sever only a portion of R.C. 2953.73(E) because "the authority to sever the unconstitutional part of a statute does not give this court license to rewrite it by selectively deleting words to change the meaning of the language that the legislature enacted."  Dissenting opinion at ¶ 70.  But our remedy requires no rewriting.  It severs unlawful provisions according to the *Geiger* test and leaves behind words already written by the General Assembly.

**{¶ 48}** The dissent cites dicta in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100-102, *abrogated in part on other grounds by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), and states that "we should resist the temptation to reconfigure by judicial fiat" the statute.  Dissenting opinion at ¶ 84.  But the dissent's words again belie our actions.  Just as our remedy requires no rewriting, it also requires no reconfiguring.  Consistent with *Geiger*, the remedy deletes the words of the unconstitutional provision but neither adds words to nor removes words from the constitutional portions.  The General

16

Assembly's original words remain, and in their original order. We have merely excised text, pursuant to the guidance of *Geiger*.

{¶ 49} Next, the remedy is in accordance with our precedent. The dissent recognizes, dissenting opinion at ¶ 71, that the court has severed portions of a statute on a number of occasions. *State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 18; *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 20-21; *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 127; *State v. Hochhausler*, 76 Ohio St.3d 455, 464, 668 N.E.2d 457 (1996); *Hausman v. Dayton*, 73 Ohio St.3d 671, 679, 653 N.E.2d 1190 (1995); *Maurer*, 71 Ohio St.3d at 523-524, 644 N.E.2d 369; *State ex rel. Doersam v. Indus. Comm.*, 45 Ohio St.3d 115, 122, 543 N.E.2d 1169 (1989).

{¶ 50} The dissent notes that in some cases, the court "deleted whole sentences" and in others it "struck individual words," but offers no explanation of how striking words is different from the remedy we advance here. Dissenting opinion at ¶ 71. Particularly, in both *Doersam* and *Maurer*, the remedy was similar to the one in this case. In *Doersam*, the court struck only that provision that was "violative of the mandate that no person shall be denied equal protection of the laws" and accordingly deleted the words "if the death is due to injury received or occupational disease first diagnosed." *Id.* at 122. Despite the dissent's novel interpretation of *Doersam*, dissenting opinion at ¶ 75, the case is good law and has been for more than 25 years. The dissent's reference to an opinion concurring in part and dissenting in part in that case does not change the majority's holding or remedy. In *Maurer*, the court excised all references to commutations and reprieves in a statute, including the phrase "commutation of sentence, or reprieve." *Id.* at 523-524. In order to excise all the unlawful provisions related to commutations or reprieves, the court had to sever ancillary words, not merely "one or more terms in a series that were unconstitutional," as the dissent claims. Dissenting opinion at

¶ 71. Thus, our own precedent in severing language in *Doersam* and *Maurer* further establishes that the severance remedy we employ in this case is permissible.

{¶ 51} Finally, R.C. 1.50 and our case law support our limited severance remedy. The *Geiger* test prohibits severance if the unconstitutional part of the statute is "so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out." *Geiger*, 117 Ohio St. at 466, 160 N.E. 28. In other words, if it is impossible to excise the unconstitutional language and still achieve the General Assembly's intent, then severance is not an option, and we must find the entire statute unconstitutional.

{¶ 52} We have reiterated the primacy of preserving the legislature's intent on a number of occasions. In *Doersam*, we recognized "our obligation to preserve as much of the General Assembly's handiwork as is constitutionally permissible." *Id.* at 121. And in *Foster*, we emphasized that goal on at least three occasions. First, we recognized that "[e]xcising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly * * *." *Id.,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 98. Next, we noted, "Significantly, the severance remedy preserves 'truth in sentencing,' a fundamental element of S.B. 2." *Id.* at ¶ 101. And finally, we admired the remedy:

> Severance also is the remedy that will best preserve the paramount goals of community safety and appropriate punishment and the major elements of our sentencing code. Removing presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General Assembly's goal of truth in sentencing.

*Id.* at ¶ 102. Just as the court attempted to apply the severance remedy in *Foster* in a way that preserved the General Assembly's intent, we endeavor to give effect to the legislature's intent by carefully excising only those provisions of the statute that are unconstitutional and can be severed.

{¶ 53} Conversely, the dissent's proposed severance of R.C. 2953.73(E) in its entirety would violate *Geiger* by "chang[ing] the meaning of the language the legislature enacted"—just what the dissent forswears. Dissenting opinion at ¶ 80. Most obviously, the dissent seeks to reject the legislature's intent altogether by removing the entire statutory section by which the General Assembly provided eligible capital offenders an appeal to the Supreme Court. Indeed, the dissent makes this intent clear: "The duty to review error allegedly occurring in postconviction proceedings in death-penalty cases belongs in the first instance to the appellate courts of this state." Dissenting opinion at ¶ 79. Additionally, R.C. 2953.73(E) currently provides a right of appeal only to offenders, but wholly severing (E), could open up the right of appeal to the state.

{¶ 54} As the Eighth District Court of Appeals explained in *State v. Montgomery*:

> The first sentence of R.C. 2953.73 makes it clear that R.C. 2953.71 to 2953.84 govern the appealability of orders entered in such proceedings: "A judgment and order of a court entered under division (D) of this section [concerning a court's determination to accept or reject an application for DNA testing] is appealable only as provided in this section." * * * [W]e find that only the defendant whose application for DNA testing has been rejected is permitted to appeal. R.C. 2953.73(E) provides that if the trial court rejects an application for DNA testing, the defendant can appeal by leave of court to the supreme court in a death penalty case; in any other case,

the defendant can appeal as of right to the relevant court of appeals. There is no provision for an appeal by the state.

(Brackets sic.)  8th Dist. Cuyahoga No. 97143, 2012-Ohio-1640, ¶ 12-13.

{¶ 55} By entirely severing (E), the dissent ensures that the only means of appealing a decision concerning a postconviction DNA testing application is R.C. 2505.03(A), which provides, "Every final order, judgment, or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction."  Unlike the language in (E) that the dissent would sever, R.C. 2505.03 does not restrict the state's right to file an appeal.

{¶ 56} The dissent posits that the state's right to appeal would arise in R.C. 2945.67(A), but that law applies specifically to criminal cases.  It is well settled that postconviction relief is civil in nature, so R.C. 2945.67 is inapplicable.  *Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28, citing *Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994).  But even if R.C. 2945.67 did govern postconviction appeals, it still allows the state to appeal with the court's permission, while the legislature clearly intended to eliminate the state's appellate right when it drafted R.C. 2953.73 and gave appellate rights only to offenders.

{¶ 57} Because the dissent's remedy fails to satisfy the second part of the *Geiger* test, it is unworkable.  The dissent's strict adherence to its own faulty interpretation of the *Geiger* test would render it necessary for us to strike down the entire postconviction DNA-testing statute.  *See State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 133 Ohio St.3d 561, 2012-Ohio-4837, 979 N.E.2d 1193, ¶ 40-41.

*Severance of R.C. 2953.72(A)(8)*

{¶ 58} Because we sever the challenged portion of the postconviction law, we must consider a related section, R.C. 2953.72(A)(8), which delineates the

requirements that the offender must acknowledge and submit on a form provided by the attorney general with the offender's application for DNA testing.

{¶ 59} Pursuant to this section, the offender acknowledges that "the offender may seek leave of the supreme court to appeal the rejection to that court if the offender was sentenced to death for the offense for which the offender is requesting the DNA testing and, if the offender was not sentenced to death for that offense, may appeal the rejection to the court of appeals * * *." R.C. 2953.72(A)(8). This section is unconstitutional for the same reasons that R.C. 2953.73(E) is invalid. But we can save the section by excising text from this portion in a way that passes the *Geiger* test and results in a constitutional statute.

{¶ 60} Specifically, by severing the text that reads "seek leave of the supreme court to," "that court if the offender was sentenced to death for the offense for which the offender is requesting the DNA testing and, if the offender was not sentenced to death for that offense, may appeal the rejection to," and "to the court of appeals," the section is left with the direction that "the offender may appeal the rejection." The revised R.C. 2953.72(A)(8) has meaning, can be read alone without the addition of any new language, comports with the revised R.C. 2953.73(E)(1), and continues to give effect to the General Assembly's intent (in this case providing a summary of the right of appeal set forth in R.C. 295.73). Because R.C. 2953.72(A)(8) refers applicants back to R.C. 2953.71 through 2953.81, we are not concerned that the statute's instructions for appeal are now less detailed. R.C. 2953.72(A)(8) is meant to provide only a summary of the statutory scheme for postconviction DNA testing, and it still achieves that goal.

{¶ 61} Without undertaking a *Geiger* analysis, the dissent states that it would sever all of R.C. 2953.72(A)(8) and 2953.72 (A)(9). But entirely excising both of these sections would violate the *Geiger* test by failing to give effect to the intention of the legislature, and create another unworkable remedy. Once again, the dissent's proposed remedy fails by significantly expanding the scope of appeal.

**{¶ 62}** R.C. 2953.72(A)(8) specifies:

[T]he court of common pleas has the sole discretion subject to an appeal as described in this division to determine whether an offender is an eligible offender and whether an eligible offender's application for DNA testing satisfies the acceptance criteria described in division (A)(4) of this section and whether the application should be accepted or rejected [and] no determination otherwise made by the court of common pleas in the exercise of its discretion regarding the eligibility of an offender or regarding postconviction DNA testing under those provisions is reviewable by or appealable to any court.

R.C. 2953.72(A)(9) emphasizes:

[A]n offender who participates in any phase of the mechanism contained in [R.C. 2953.71 to 2953.81], including, but not limited to, applying for DNA testing and being rejected, having an application for DNA testing accepted and not receiving the test, or having DNA testing conducted and receiving unfavorable results, does not gain as a result of the participation any constitutional right to challenge, or, except as provided in division (A)(8) of this section, any right to any review or appeal of, the manner in which those provisions are carried out.

**{¶ 63}** Sections (A)(8) and (A)(9) closely circumscribe the issues that an offender may raise on appeal. The dissent, by excising (A)(8) and (A)(9), and therefore implicitly seating the appellate right in R.C. 2505.03, would broadly expand the rights of offenders to appeal any final order or judgment of the court in

relation to their application for postconviction DNA testing and to seek review of any element of the decision with which the offender disagrees. The legislature plainly intended, through (A)(8) and (A)(9), to limit what findings a court could review on appeal. The dissent's remedy would frustrate that intent, violating *Geiger* and the dissent's own admonition. Because we can lawfully sever the unconstitutional portions of Ohio's postconviction DNA testing law under the rules set forth in *Geiger*, we conclude that severance is the appropriate remedy. Accordingly, we hold that the unconstitutional and void provisions of the law are severed, as described above.

## CONCLUSION

**{¶ 64}** We hold that R.C. 2953.73(E)(1) violates the right to equal protection under the United States and Ohio Constitutions. We further hold that the unconstitutional portions of the statutory scheme can be excised to create a lawful procedure that provides an appeal of right to this court for capital offenders. Consistent with our constitutional duty to preserve the constitutional portions of a statute, we apply the severance remedy to the legislatively created appellate process for capital offenders seeking postconviction DNA testing pursuant to R.C. 2953.73(E)(1). Noling and other eligible capital offenders are now entitled to an appeal of right to the Ohio Supreme Court. This appeal is sua sponte converted to an appeal as of right, and the parties shall proceed in accordance with S.Ct.Prac.R. 16.01 to 16.08. Noling shall file his brief addressing the merits of the trial court's judgment denying his application for postconviction DNA testing within 40 days from the issuance of this decision.

Judgment accordingly.

PFEIFER, LANZINGER, and MOORE, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY and FRENCH, JJ.

CARLA D. MOORE, of the Ninth District Court of Appeals, sitting for O'NEILL, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 65} Respectfully, I dissent.

{¶ 66} At issue here are the provisions of R.C. 2953.73(E), which purport to vest this court with exclusive appellate jurisdiction to review the trial court's denial of postconviction DNA testing pursuant to R.C. 2953.71 et seq.

{¶ 67} R.C. 2953.73(E) provides:

A judgment and order of a court entered under division (D) of this section is appealable only as provided in this division. If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and the court of common pleas rejects the application under division (D) of this section, one of the following applies:

(1) If the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the offender may seek leave of the supreme court to appeal the rejection to the supreme court. Courts of appeals do not have jurisdiction to review any rejection if the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing.

(2) If the offender was not sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the rejection is a final appealable order, and the offender may appeal it to the court of appeals of the district in which is located that court of common pleas.

{¶ 68} I agree with the majority that this statute is unconstitutional because it creates different appellate remedies for capital and noncapital offenders: capital offenders may seek leave to appeal to the Ohio Supreme Court, but noncapital offenders may appeal to a district court of appeals as of right. However, I dissent from the remedy imposed by the majority to selectively sever words, not provisions, from the statute, changing the discretionary appeal to the supreme court intended by the General Assembly into a direct appeal to this court.

### Severance

{¶ 69} R.C. 1.50 permits courts to sever unconstitutional provisions of a statute in order to preserve its constitutional provisions:

> If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.

Thus, our role in applying the severance remedy is to determine whether we can give effect to the statute "without the invalid provision."

{¶ 70} But the authority to sever the unconstitutional part of a statute does not give this court license to rewrite it by selectively deleting words to change the meaning of the language that the legislature enacted. Rather, we are to consider whether the unconstitutional *provision* is capable of separation from the remaining parts of the statute.

{¶ 71} The majority notes that "the court has partially severed portions of a statute on a number of occasions." Majority opinion at ¶ 49. That may be true, but

that does not justify selectively deleting words to rewrite the statute that the legislature enacted. Notably, the court in *State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 18, *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 20-21, *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 127, and *State v. Hochhausler*, 76 Ohio St.3d 455, 464, 668 N.E.2d 457 (1996), deleted whole sentences from the statute. And while the court in *Hausman v. Dayton*, 73 Ohio St.3d 671, 679, 653 N.E.2d 1190 (1995), and *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 523-524, 644 N.E.2d 369 (1994), struck words, it did so to eliminate one or more terms in a series that were unconstitutional while allowing the valid provisions to remain. In each of these cases, the court struck the invalid provisions in their entirety.

{¶ 72} The majority, however, now asserts that in applying the severance remedy, the court must, "whenever possible," respect the role of the legislature to create laws by saving as much of a statutory scheme as possible through severing what is unconstitutional and allowing what is not to remain. Majority opinion at ¶ 46. That test, however, has never been part of our jurisprudence until today.

{¶ 73} In *Cleveland v. State*, for example, the court invalidated a provision of R.C. 4921.25, which at that time provided:

> Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter. Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.

2012 Am.Sub.H.B. No. 487.

{¶ 74} We held that the first sentence of the statute was constitutional but that the second sentence was not, because it "unconstitutionally limits municipal home-rule authority." *Cleveland* at ¶ 17. Applying the majority's novel severance remedy advanced today, we could have saved as much of a statutory scheme as possible by simply deleting the word "not" from the second sentence of former R.C. 4921.25. We did not, because doing so would have usurped the role of the General Assembly. Rather, because the second sentence of former R.C. 4921.25 created an unconstitutional limitation on municipal home rule, we severed it in its entirety.

{¶ 75} The majority points to a case supporting its novel position, *State ex rel. Doersam v. Indus. Comm.*, 45 Ohio St.3d 115, 543 N.E.2d 1169 (1989). In *Doersam*, the court held that an amendment to R.C. 4123.59(B) violated equal protection by creating two classes of claimants who may receive workers' compensation death benefits and providing greater benefits " 'if the death is due to injury received or occupational disease first diagnosed after January 1, 1976.' " (Emphasis omitted.) *Doersam* at 117, quoting former R.C. 4123.59(B), Am.Sub.H.B. No. 545, 136 Ohio Laws, Part I, 1075, 1167. Although the court initially struck the amendment in its entirety with the effect of eliminating increased benefits for all claimants, *id*. at 121 fn. 1, on reconsideration a majority of the court decided to strike the phrase "if the death is due to injury received or occupational disease first diagnosed," resulting in all claimants receiving increased benefits, *id*. at 122.

{¶ 76} *Doersam* was wrongly decided and represents a blatant exercise of judicial activism. As Justice Wright indicated in his separate opinion, the majority's approach, "well meaning though it may be," *id.* at 124 (Wright, J., concurring in part and dissenting in part), failed to recognize the difference between *severing* a part of a statute—leaving any remedy to the wisdom of elected

lawmakers—and *amending* it by judicial fiat. In his view, "the entire [provision] must be stricken rather than the court picking and choosing words to delete." *Id.* at 123. And because it was the entire amendment that violated equal protection, it was the entire amendment that had to be severed.

{¶ 77} In this case, the invalid provision to be severed is the entirety of R.C. 2953.73(E), because that provision denies capital offenders equal protection of law by providing different appellate remedies for capital and noncapital offenders. The majority, by selectively striking words from *within* this provision—deleting only the phrase "seek leave of the supreme court to"—has not severed an invalid statutory provision but rather has engaged in judicially legislating from the bench, because it transforms a capital offender's discretionary appeal into a direct appeal to this court.

{¶ 78} Thus, contrary to its claim to the contrary, it is the majority's remedy that fails the severance test established in *Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927). The threshold question in that test is, " 'Are the constitutional and the unconstitutional parts capable of separation so that *each may be read and may stand by itself?'* " (Emphasis added.) *Id.*, quoting *State v. Bickford*, 28 N.D. 36, 147 N.W. 407, 409 (1913). The point of the first prong of the *Geiger* test is to ensure that a court severs the invalid provision in its entirety rather than selectively deleting a few words from within it, and here, it is manifest that the phrase "seek leave of the supreme court to" cannot be read and stand by itself.

{¶ 79} Further, severance is appropriate only if it serves and effectuates legislative intent. The majority, however, only speculates that the General Assembly, if it had foreseen our decision today, would have provided a direct appeal as of right to our court rather than a direct appeal to the courts of appeals, which the legislature has afforded to all other offenders requesting DNA testing as well as all those seeking postconviction relief. The duty to review error allegedly occurring in postconviction proceedings in death-penalty cases belongs in the first

instance to the appellate courts of this state. *See generally State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516.

**{¶ 80}** The majority claims that severing R.C. 2953.73(E) in its entirely changes the meaning of the statute as enacted by granting *the state* a right to a direct appeal not provided by the statute. However, the state's right to appeal in a criminal case is provided by R.C. 2945.67(A), not R.C. 2505.03, and thus, severance of R.C. 2953.73(E) would potentially allow the state an appeal by leave of the appellate court, not an appeal as of right. This results not from rewriting the statute but because generally applicable law—here, R.C. 2945.67(A)—fills the gap left by the severed invalid provisions.

**{¶ 81}** There is a difference between a severance that makes preexisting law applicable and a severance that rewrites a statute by selectively deleting its words to reach a specific result, and that distinction is respected by our case precedent.

**{¶ 82}** For instance, the majority cites *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, as an example of the court's respecting "the role of the legislature to create laws by saving as much of a statutory scheme as possible through severing what is unconstitutional and allowing what is not to remain." Majority opinion at ¶ 46. But in *Foster,* we concluded that various provisions of S.B. 2 violated the Sixth Amendment right to a jury trial and held that these "sections are severed and excised *in their entirety*." (Emphasis added.) *Foster* at ¶ 97. The *Foster* remedy similarly reinstated preexisting law, such as the common law presumption that multiple sentences run consecutively, filling the gaps left when we severed the invalid provisions of S.B. 2. *See State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 16, 18.

**{¶ 83}** In applying the severance remedy in *Foster*, we explicitly sought to uphold the legislative intent of the General Assembly in enacting S.B. 2, and we decided that "[r]emoving presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General

Assembly's goal of truth in sentencing." *Foster* at ¶ 102. And although we recognized that severance arguably "vitiates S.B. 2's goals," *id*. at ¶ 100, we nonetheless explained that "we are constrained by the principles of separation of powers and cannot rewrite the statutes," *id*., emphasizing that "[h]owever tempting it may be for this court to reconfigure the sentencing code to cause the least impact on our criminal-justice system, we must adhere to our traditional judicial role," *id*. at ¶ 102.

{¶ 84} In my view, R.C. 2953.73(E) is unconstitutional, and as in *Foster*, we should resist the temptation to reconfigure by judicial fiat the invalid appellate process that the legislature enacted. Severing R.C. 2953.73(E) from the statute and severing R.C. 2953.72(A)(8) and (9)—which require the form for requesting DNA testing to provide notice of the offender's appellate rights as provided in R.C. 2953.73(E)—is in line with our precedent and permits this court to give effect to the remaining provisions of R.C. 2953.71 et seq., clarifying that an offender denied DNA testing may bring a direct appeal to the court of appeals pursuant to the law governing appeals in other postconviction proceedings, in accord with our holding in *Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, in which we stated:

> A holding that the Supreme Court has exclusive jurisdiction over *all matters* relating to a death-penalty case would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of future cases, a scenario that the voters expressly rejected in passing the constitutional amendments. We see no reason why the courts of appeals may not currently entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed.

(Emphasis sic and footnote omitted.) *Id.* at ¶ 22.

**{¶ 85}** For these reasons, I would sever the provisions of R.C. 2953.73(E) and 2953.72(A)(8) and (9) and transfer this appeal to the Eleventh District Court of Appeals for its consideration of this matter in the first instance.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela Holder, Assistant Prosecuting Attorney, for appellee.

Ohio Innocence Project and Mark Godsey; and Timothy Young, Ohio Public Defender, and Carrie Wood, Assistant State Public Defender, for appellant.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Peter T. Reed, Deputy Solicitor, and Thomas E. Madden, Senior Assistant Attorney General, urging affirmance for amicus curiae, Ohio Attorney General Michael DeWine.

_____