Fischer, J., concurring.
{¶ 28} I fully and respectfully concur in the majority opinion and its resolution of the arguments presented by the parties. I write separately, however, to emphasize that the unique language and historical background of this state's Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, should be carefully analyzed. In a future case, this court should reexamine our precedent holding that the Ohio Equal Protection Clause is actually the "functional equivalent" of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
{¶ 29} Because the parties in this case did not challenge this court's traditional understanding of the two clauses as functionally equivalent, the majority properly follows that precedent. Today's decision should not, however, be taken to mean that the precedent is unchallengeable.
I. Introduction
{¶ 30} This court has previously held that the state courts may recognize protections under the Ohio Constitution that are greater than those provided by the United States Constitution. Arnold v. Cleveland , 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. In Arnold , the court conducted an historical analysis, concluding that when adopting Article I, Section 4 of the Ohio Constitution, the people of Ohio "chose to go even further" than the Second Amendment to the United States Constitution regarding the right of an individual to possess firearms. Id. at 43, 616 N.E.2d 163. Thus, it is not a forgone conclusion that a clause in the Ohio Constitution is the "functional equivalent" of a clause in the federal Constitution that addresses a similar issue.
*575 II. The History of the Ohio and United States Equal Protection Clauses
{¶ 31} The Equal Protection Clause of the Ohio Constitution was adopted as part of the 1851 Ohio Constitution, whereas the Fourteenth Amendment to the United States Constitution was not ratified until 1868. Therefore, there can be no legitimate argument that the Ohio Equal Protection Clause was the "functional equivalent" of the federal Equal Protection Clause for the first 17 years that the Ohio clause existed-there was no federal clause to which it could be equivalent, functional or otherwise.
A. The Ohio Equal Protection Clause
{¶ 32} The Ohio Equal Protection Clause is similar in some ways to the Equal Protection Clauses found in the 1776 Virginia Declaration of Rights and the 1776 Pennsylvania Constitution. The Ohio Equal Protection Clause provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same * * *." Article I, Section 2, Ohio Constitution. Both the 1776 Virginia and 1776 Pennsylvania clauses provided that "government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community." Virginia Declaration of Rights of 1776, *1237 Section 3; Pennsylvania Constitution of 1776, Article V. One obvious difference is that neither the Virginia nor the Pennsylvania version actually included the word "equal." Another difference is the inclusion of the language "or ought to be" in both the former Virginia and Pennsylvania Equal Protection Clauses but not in the Ohio Equal Protection Clause. The phrase "or ought to be" that was contained in the Virginia and Pennsylvania versions has been taken to mean that those clauses were more descriptive of a political philosophy than clauses, like the Ohio Equal Protection Clause, that specifically confer rights. Steven H. Steinglass & Gino J. Scarselli, The Ohio State Constitution 85 (2011).
{¶ 33} Idaho Constitution, Article I, Section 2 contains the same language as the Ohio Equal Protection Clause, and South Dakota Constitution, Article VI, Section 26 contains similar language. Both the Idaho and South Dakota versions, however, were ratified in 1889, 21 years after the federal clause was ratified. Kansas's equal-protection clause, Kansas Bill of Rights, Section 2, was ratified in 1859, 9 years before the federal clause was ratified. The Kansas version contains language similar to the Ohio Equal Protection Clause, but the Ohio and Kansas clauses are too distinct to be incontrovertibly viewed as equivalent. And even if the two clauses were identical, they should not be viewed as equivalent without significant background and historical analysis that supports that view. No other state court's interpretation of its own equal-protection clause is binding on this court, and because each state version has a different historical background, interpretations provided by state courts analyzing their own equal-protection *576 clauses are of limited, if any, persuasive value to an Ohio court interpreting the Ohio Equal Protection Clause.
{¶ 34} Moreover, this court did not cite the Ohio Equal Protection Clause in any published decision until 1895, well after the passage of the federal Equal Protection Clause. See State ex rel. Schwartz v. Ferris , 53 Ohio St. 314, 341, 41 N.E. 579 (1895). Thus, this court has not conducted a full analysis of the Ohio Equal Protection Clause that was not influenced by federal Equal Protection Clause jurisprudence, despite the fact that the Ohio clause is 17 years older than the federal clause.
B. The United States Equal Protection Clause
{¶ 35} The federal Equal Protection Clause provides that "[n]o state shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Fourteenth Amendment, including its Equal Protection Clause, was drafted primarily by Congressman John Bingham of Ohio. Richard L. Aynes, The Continuing Importance of Congressman John A. Bingham and the Fourteenth Amendment , 36 Akron L.Rev. 589, 590 (2003). It was ratified in 1868.
{¶ 36} The Ohio and federal Equal Protection Clauses were drafted relatively closely to each other in time, so it is reasonable to assume that Congressman Bingham was familiar with the language in the Ohio clause. Yet each clause's language is significantly different from the language of the other. Therefore, either a plain-meaning or an intentionalist interpretation of the Ohio Equal Protection Clause could well lead to the determination that the Ohio clause is too distinct from the federal clause for them to be considered "functional equivalents." See Paul Brest, The Misconceived Quest for the Original Understanding , 60 B.U.L.Rev. 204 (1980) and fn. 5, quoting Home Bldg. & Loan Assn. v. Blaisdell , 290 U.S. 398, 453, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting) ("For the strict intentionalist, 'the *1238 whole aim of construction, as applied to a provision of the Constitution, is * * * to ascertain and give effect to the intent of its framers and the people who adopted it' " [ellipsis sic] ).
C. Ohio Supreme Court Cases Analyzing the Ohio Equal Protection Clause
{¶ 37} Traditionally, this court has treated the Ohio Equal Protection Clause and the federal Equal Protection Clause as "functionally equivalent." See Schwartz , 53 Ohio St. at 341, 41 N.E. 579 ("it is sufficient to say that the provisions of this section of the federal constitution, as to this question, are not broader than the second section of our bill of rights"); Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ. , 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999) ("the federal and Ohio Equal Protection Clauses are to be construed and analyzed identically");
*577 State v. Aalim , 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 29 (the federal and Ohio Equal Protection Clauses are "functionally equivalent and require the same analysis").
{¶ 38} Nonetheless, that precedent has been questioned in at least two recent decisions. See State v. Noling , 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 11 ("the Equal Protection Clause of the Ohio Constitution is coextensive with, or stronger than , that of the federal Constitution" [emphasis added] ); State v. Mole , 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368. In Mole , Chief Justice O'Connor authored the lead opinion, which was joined by two other justices, and another justice concurred in judgment only. The chief justice made clear that the Ohio Constitution is a document of force independent from the United States Constitution, id. at ¶ 14, and that there are situations in which "the guarantees of equal protection in the Ohio Constitution independently forbid * * * disparate treatment" even if the federal Equal Protection Clause does not forbid that treatment, id. at ¶ 23. Justice French, in a dissenting opinion in Mole that was joined by Justice O'Donnell, stated that the Ohio Equal Protection Clause may in theory provide greater protections than those provided by the federal clause but that holding as much requires "an independent analysis of the equal-protection guarantee in Article I, Section 2 of the Ohio Constitution premised on its language, history or early understandings." Id. at ¶ 117 (French, J., dissenting).
{¶ 39} Thus, this court's jurisprudence on the Ohio Equal Protection Clause has not been uniform. Given the recent divergence from our traditional understanding of the clause, it is not unreasonable to suggest that this court should, with the benefit of full briefing, thoroughly reexamine the Ohio and federal Equal Protection Clauses and determine whether they are indeed functional equivalents.
III. Testing Functional Equivalence
{¶ 40} One major problem with the functional-equivalence approach is that United States Supreme Court precedent regarding some amendments to the United States Constitution, including the Fourteenth Amendment and its Equal Protection Clause, is far from static. In the 1960s, the court applied a rational-basis test unless the statute at issue "classified on the basis of race" or "provided for unequal distribution of fundamental rights." William D. Araiza, The Section 5 Power and the Rational Basis Standard of Equal Protection , 79 Tul.L.Rev. 519, 521-522 (2005). By the end of the 1970s, the court had started applying differing levels of scrutiny that were "higher" than the rational-basis test to cases involving gender, illegitimacy, and alienage. Id. at 522. By the mid-1990s, the court was applying in equal-protection gender cases a standard of review similar *1239 to that which it was applying in equal-protection race cases. Id.
{¶ 41} As noted above, this court first recognized the Ohio Equal Protection Clause as the functional equivalent of the federal Equal Protection Clause in 1895. See Schwartz , 53 Ohio St. at 341, 41 N.E. 579. Plainly, the United States *578 Supreme Court's interpretation of the federal Equal Protection Clause has changed significantly during the 120-plus years that have passed since this court's first recognition of functional equivalence. With this in mind, it is arguable that the Ohio Equal Protection Clause should be interpreted as providing the protections that the United States Supreme Court had recognized under the federal Equal Protection Clause until 1895. Moreover, in the future, the United States Supreme Court may continue to add or subtract from the protections it interprets the federal Equal Protection Clause as providing.
{¶ 42} By treating the two clauses as functionally equivalent, this court delegates its final authority to interpret the Ohio clause to the United States Supreme Court, which that court exercises whenever it substantially alters its interpretation of the federal clause. This "upward delegation" of the duty to interpret the Ohio Constitution is improper under our federal system and unconstitutional under the Ohio Constitution. See Article IV, Section 1, Ohio Constitution. Thus, a strong argument can be made that this court cannot blindly accept the current, or any new, federal interpretation but instead must independently determine when interpreting the Ohio Equal Protection Clause whether to follow the United States Supreme Court's interpretation of the federal Equal Protection Clause.
{¶ 43} Because this court's recent caselaw on the Ohio Equal Protection Clause is not uniform, because the Ohio clause has language and a historical background that are substantially different from those of the federal Equal Protection Clause, and because the United States Supreme Court's jurisprudence on the federal clause has repeatedly shifted since this court first made the "functional-equivalence" determination, a future challenge to this court's equal-protection functional-equivalence precedent should be carefully analyzed and resolved with thorough reasoning.
IV. Conclusion
{¶ 44} Again, the parties in this case did not challenge this court's traditional understanding that the Ohio Equal Protection Clause is the functional equivalent of the federal Equal Protection Clause. As is proper, the majority opinion does not conduct an analysis of unraised arguments. I take no position on whether the arguments proposed above, or any other arguments challenging this court's functional-equivalence holdings, would lead me to conclude that the Ohio Equal Protection Clause is anything other than the functional equivalent of the federal Equal Protection Clause as currently interpreted by the United States Supreme Court. Nonetheless, if such arguments were properly briefed and submitted to this court, I believe that the court would need to conduct "an independent analysis of the equal-protection guarantee in Article I, Section 2 of the Ohio Constitution premised on its language, history or early understandings,"
*579 Mole , 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, at ¶ 117 (French J. dissenting).