OPINION
{¶ 1} Defendant-appellant Michael Jones appeals his multiple convictions in the Stark County Court of Common Pleas. Plaintiff-appell ee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 20, 2007, Ian Smith was working as a cashier on the midnight shift at the Speedway Gas Station on Lincolnway East in Massillon, Ohio. At approximately 2:00 a.m., a black male entered the store wearing a black winter coat and hooded shirt. The male had the hood pulled over his eyes, but Smith was able to observe the male had a top left tooth missing and some facial hair. The male went into the bathroom and then came over to the cashier's station asking Smith "where is the money?" The male then grabbed Smith by his shirt and jerked him up on the counter, asking him again "where is the money?" The male then went around the corner, telling Smith he had a gun. Smith opened the cash drawer, and the male hit him on the head with a flashlight, shattering the flashlight. The male grabbed $350.00 from the cash drawer. Then, the male smacked Smith in the forehead with his open palm, and left the store. A customer pumping gas saw the male hit Smith, and called 911. Smith later identified Appellant from a photo line-up as the perpetrator.
 {¶ 3} On March 23, 2007, DeAnn Overholt worked as a cashier at the Hills and Dales Speedway Gas Station in Massillon, Ohio. Around 1:15 a.m., a black male entered the station and asked Overholt if she was alone. The male then told Overholt to open her drawer so he could "take the money, bitch." Overholt opened the drawer and the male took the $60.00 inside. He then told Overholt to go to the backroom, lay down and take her clothes off. Overholt refused, informing the male she was pregnant and *Page 3 
asking him not to hurt her. The male took Overholt from behind the counter, locked the door to the station and demanded more money. He then took $80.00 from her purse.
 {¶ 4} The male told Overholt she was going to take him "where he needed to go." The male unlocked the station door, took Overholt to her van and climbed over her to get in the passenger seat. Overholt drove the vehicle underneath a bridge about a mile from where Appellant was living. The male told Overholt to turn off the van, turn the lights off and take off her clothes. Overholt took off her shirt, bra and stripped her pants halfway down. The male climbed in the back seat, undid his pants and told Overholt to perform oral sex. After ten to fifteen minutes, the male told Overholt to swallow his ejaculation. The male exited the vehicle, stating "I'm going to let you live, bitch."
 {¶ 5} Overholt returned to the gas station, and called 911. Overholt later identified Appellant from a photo line-up.
 {¶ 6} Appellant's roommate, Willis McGeorge, identified Appellant from a surveillance photograph in the local newspaper, and called the police. McGeorge told the officers Appellant owned a black "hoodie" with a silver logo and had asked McGeorge if he would exchange his orange "pulley" with him because he wanted to remain "incognito." McGeorge also informed the officers Appellant took his bicycle around March 23, 2007, the date of the second robbery. The bicycle was identified as that found by the police resting against the Walgreens building next to the Hills and Dales Speedway station the day after the robbery. The handlebar grips were later tested, and Appellant's DNA was found on the grips. *Page 4 
 {¶ 7} The Stark County Grand Jury indicted Appellant on one count of rape, one count of kidnapping and two counts of robbery.
 {¶ 8} On August 28, 2007, the matter proceeded to jury trial. The jury returned a verdict of guilty to all the charges in the indictment. The trial court further classified Appellant as a sexual predator. Appellant was sentenced to nine years on the rape and kidnapping charges, to be served concurrent; seven years on one robbery count and six years on the other robbery count for a total term of twenty-two years.
 {¶ 9} Appellant now appeals, assigning as error:
 {¶ 10} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER.
 {¶ 11} "II. THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S SPEEDY TRIAL RIGHTS.
 {¶ 12} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S PRETRIAL MOTION IN LIMINE.
 {¶ 13} "IV. THERE WAS INSUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY OF AND HIS CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} "V. THE TRIAL COURT ERRED WHEN IT PERMITTED THE IMPROPER OPINION TESTIMONY OF STATE'S WITNESSES."
 I. {¶ 15} In the first assignment of error, Appellant argues the trial court abused its discretion in denying his motion for relief from prejudicial joinder. *Page 5 
 {¶ 16} On July 18, 2007, Appellant filed a motion requesting counts one through three be tried separate from count four. The first three counts involved the robbery, rape and kidnapping of Overholt, which occurred on March 23, 2007. Count four involved the robbery of Smith, which occurred three days earlier on March 20, 2007. Via Judgment Entry of August 22, 2007, the trial court denied Appellant's motion finding with appropriate jury instructions, the jury would be able to weigh the facts of each count separately.
 {¶ 17} A determination on severance lies in the trial court's sound discretion. State v. Schiam (1992), 65 Ohio St.3d 51. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Crim. R. 14 governs relief from prejudicial joinder and states, in pertinent part:
 {¶ 18} "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 19} Crim. R. 8(A) governs joinder of offenses and states:
 {¶ 20} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions *Page 6 
connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 21} "It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries." State v. Glass (March 9, 2001), Greene App. No. 2000 CA 74, at 2, citing State v. Schiebel (1990),55 Ohio St.3d 71, 86-87; State v. Torres (1981), 66 Ohio St.2d 340, 343; and State v.Thomas (1980), 61 Ohio St.2d 223, 225.
 {¶ 22} The trial court in the case at bar specifically instructed the jury to consider each count separately, and it is presumed the jury followed the court's instruction. We fail to find undue prejudice caused by the joinder of the counts. The underlying offenses, two acts of robbery at Speedway gas stations, were properly joined as offenses of the same or similar character and were part of a course of criminal conduct. Because evidence of either crime would have been admissible as part of a common scheme or plan under Evid. R. 404(B), Appellant has not demonstrated the joinder prejudiced his right to a fair trial. Further, the evidence of each crime was simple and distinct, and there was not a likelihood the jury would be unable to separate the crimes.
 {¶ 23} Appellant's first assignment of error is overruled.
 II. {¶ 24} In the second assignment of error, Appellant argues the trial court violated his right to a speedy trial.
 {¶ 25} R.C. Section 2945.71(C), reads:
 {¶ 26} "(C) A person against whom a charge of felony is pending: *Page 7 
 {¶ 27} "(1) Notwithstanding any provisions to the contrary in Criminal Rule 5(B), shall be accorded a preliminary hearing within fifteen consecutive days after the person's arrest if the accused is not held in jail in lieu of bail on the pending charge or within ten consecutive days after the person's arrest if the accused is held in jail in lieu of bail on the pending charge;
 {¶ 28} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest."
 {¶ 29} R.C. 2945.72 states:
 {¶ 30} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 31} "* * *
 {¶ 32} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;"
 {¶ 33} "* * *
 {¶ 34} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;"
 {¶ 35} Appellant was arrested on March 26, 2007, and remained in jail during the disposition of this case. The trial commenced on August 29. 2007, 151 days later. On June 7, 2007, Appellant filed a motion for competency, which tolled his speedy trial time. He further failed to cooperate with the psychological testing. On July 18, 2007, Appellant filed a motion for separate trials, which was denied on August 22, 2007. He *Page 8 
further failed to respond to the State's request for discovery. On August 27, 2007, Appellant was found competent to stand trial.
 {¶ 36} Finally, the trial court's July 18, 2007 Judgment Entry indicates Appellant consented to the August 28, 2007 trial date due to the complaining witness' impending pregnancy due date, and to allow his counsel to become more familiar with the case.
 {¶ 37} We find the speedy trial time was tolled from June 7, 2007, to August 27, 2007, pursuant to R.C. 2945.72(B) and (E). Appellant's second assignment of error is overruled.
 III, V. {¶ 38} The third and fifth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 39} Appellant argues the trial court erred in failing to grant his pretrial motion in limine to exclude the testimony of his roommate, Officer Slutz and Detective Grizzard testifying they identified Appellant in surveillance photographs published in the local newspaper. The trial court denied the motion in limine.
 {¶ 40} The following exchange took place prior to trial relative to Appellant's motion in limine.
 {¶ 41} "Mr. Frame: Your honor, with regard to our motion in limine, we are arguing that the issue of whether or not this person is the — — Mr. Jones is the person in the photograph is really an issue for the jury to decide. And, therefore, any officers or any other people who would come into court and say that I saw this picture, it is Mr. Jones, that is really the ultimate issue in this case is whose (sic) this person in the picture. *Page 9 
 {¶ 42} "Therefore, we would argue that that's really a jury question, that the witnesses shouldn't be allowed to testify to the picture, the jurors themselves should look at the picture and then look at Mr. Jones and see if it is the same person.
 {¶ 43} "The Court: You know, in theory I agree with what you are saying. In practicality, I don't know how it works. State of Ohio?
 {¶ 44} "Ms. Hartnett: Your Honor, that's evidence for the jury to consider. The element is the identification and these witnesses, I believe the ones that Mr. Frame is referring to, aren't going to come in and say he's the one who committed this offense. They're going to say I saw this picture from the video. I recognize that individual to be Mr. Jones and then obviously the jury has to rely on the testimony of the victims and the people who were there to say who was the person being filmed to make that and agree to make that decision.
 {¶ 45} "But this is just evidence like anything else. I mean, this would be analogous to a store owner having video equipment in their store, having the surveillance equipment, finding there had been a theft, coming in, watching the tape and saying oh, I recognize this person to be my employee or whomever. He didn't see it happen. It's the same thing. It is evidence of that and certainly they are free to challenge the witness's knowledge.
 {¶ 46} "The Court: Well, I suppose it depends on how it comes out. If a witness is on the stand and he said I was presented with this photograph, and I recognized the photograph of that, it was Mr. Ken Frame, and I therefore went and based my investigation upon my belief this to be Ken Frame, I believe that's appropriate evidence *Page 10 
that can come out. If he says on the stand to the jury this is a picture of Ken Frame — of him, they are right, but I have never heard that come out in a trial.
 {¶ 47} "Mr. Frame: With regards to Officer Slutz, the only thing is he sees the picture, says it was this Jones, found Mr. Jones, questioned him, took a picture of him and that was it. So there's really no point in any of his testimony except to say that.
 {¶ 48} "The Court: It's like Mr. Frame, that's — — I don't want to debate with you, but how do you get around him I looked at this picture. What did you do with that picture? Well, then I went and I spoke to Mr. Jones. I mean —
 {¶ 49} "Ms. Hartnett: Except he went further and went to the detectives.
 {¶ 50} "The Court: Tell me what they're supposed to say.
 {¶ 51} "Mr. Frame: There's no point at all for even bringing in Officer Slutz. He didn't do anything.
 {¶ 52} "The Court: I will work with it as best I can."
 {¶ 53} Appellant argues the trial court erred in permitting improper opinion testimony of State witnesses. Specifically, Appellant cites the testimony of McGeorge, Officer Slutz, and Detective Grizzard relative to a surveillance photograph. The State presented the still photograph as evidence at trial.
 {¶ 54} Appellant does not cite to where in the record the alleged error occurs. However, upon review of the record, we find the testimony is not inadmissible opinion testimony. Nor has Appellant offered legal authority as to the inadmissibility of the testimony as opinion evidence. The reliability and weight to be given the testimony was left to the jury's province. Rather, the testimony demonstrates the identification of Appellant by his roommate and the detectives was part of the police investigation *Page 11 
leading to Appellant's arrest. The admission or exclusion of evidence rests within the sound discretion of the trial court. We find the trial court did not abuse its discretion in admitting the testimony of the officers and McGeorge.
 {¶ 55} The third and fifth assignments of error are overruled.
 IV. {¶ 56} In the fourth assignment of error, Appellant maintains his conviction is against the manifest weight and sufficiency of the evidence.
 {¶ 57} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St .3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 58} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 59} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind *Page 12 
of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 60} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 61} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N .E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive-the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence.Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. *Page 13 
 {¶ 62} "Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01 CA2605, 2002 WL 507530, fn. 1;State v. Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66,2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. C.E. Morris Co. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings.State v. Thompkins, 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989." State v.Wilson, 713 Ohio St.3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26;865 N.E.2d 1264, 1269-1270.
 {¶ 63} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." State v. Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 64} The Supreme Court of Ohio, in State v. Moody (1978),55 Ohio St.2d 64, 67, quoting Manson v. Brathwaite (1977), 432 U.S. 98, stated that reliability is the *Page 14 
"linchpin" in determining the admissibility of identification testimony. Factors that affect reliability and, therefore, admissibility, include:
 {¶ 65} "* * * `* * * [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' Neil v.Biggers (1972), 409 U.S. 188, 199. * * *"
 {¶ 66} Appellant does not dispute the crimes at issue took place. Rather, Appellant asserts he is the victim of mistaken identity, and his roommate, McGeorge, is just as likely to have committed the offenses.
 {¶ 67} Upon review of the record, both of the victims identified Appellant as the person who committed the crimes from a photographic line-up compiled by Detective Ricker. Further, both victims observed Appellant at the time of the commission of the relevant offense, and were in close proximity to him. Both identified Appellant at trial, and offered descriptions matching Appellant's characteristics. Appellant's DNA matched DNA on the handlebars of the bike found near the location of the crimes. Further, three other persons other than the victims identified Appellant from a published surveillance photo.
 {¶ 68} Based upon the above, we find there was competent, credible evidence Appellant committed the offenses charged, and the jury did not lose its way in so finding. *Page 15 
 {¶ 69} The fifth assignment of error is overruled.
 Hoffman, P.J. Wise, J. and Edwards, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1