[Cite as *State v. Wilson*, 2018-Ohio-5166.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18CAA040034 |
| F. LEON WILSON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Delaware County Court of Common Pleas, Case No. 15CRI-07-0319

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 20, 2018

APPEARANCES:

For Plaintiff-Appellee

DOUGLAS DUMOLT
Assistant Prosecuting Attorney
Delaware County
140 North Sandusky St., 3rd Floor
Box 8006
Delaware, OH 43015-8006

For Defendant-Appellant

DENNIS BELLI
536 South High St., Fl. 2
Columbus, OH 43215-5785

*Gwin, P.J.*

{¶1} Appellant F. Leon Wilson ["Wilson"] appeals from the April 3, 2018 judgment entry of the Delaware County Court of Common Pleas denying his application for post-conviction DNA testing.

*Facts and Procedural History*

{¶2} On July 17, 2015, the Delaware County Grand Jury indicted Wilson on three counts of gross sexual imposition in violation of R.C. 2907.05. Counts 1 and 2 pertained to E.C., four years old, and Count 3 pertained to K.P., seven years old. Each count included a school safety zone specification (R.C. 2941.143). The charges arose from separate incidents between Wilson and E.C. and Wilson and K.P. while at school. Wilson was their chess teacher.

{¶3} On April 9, 2015, E.C. told her parents her chess teacher touched her, demonstrating the touch by placing her hand on top of her clothes between her legs and moving her hand up and down. E.C. told her forensic interviewer the same story.

{¶4} Following Wilson's arrest, which was publicized in the press, K.P.'s father, asked K.P. if anything had happened to her since she had been a student in Wilson's chess class in February and March 2015. K.P. stated it happened once. K.P. told her forensic interviewer that Wilson asked her for permission to touch her vagina and when she gave him permission, he rubbed her vagina over her clothing.

{¶5} On August 31, 2015, Wilson filed a motion to sever Counts 1 and 2 from Count 3. A hearing was held on September 21, 2015. By judgment entry filed September 24, 2015, the trial court denied the motion.

{¶6} On December 5, 2015, Wilson filed a motion for competency hearings of E.C. and K.P. prior to either being permitted to testify. A hearing was held on January 4, 2016. The state indicated it would not be calling E.C. as a witness. The trial court conducted an examination of K.P. and determined K.P. to be competent to testify.

{¶7} On January 4, 2016, Wilson filed a motion to compel confrontation, objecting to the playing of E.C.'s videotaped forensic interview during the trial. A hearing was held on February 11, 2016.

{¶8} On January 21, 2016, Wilson filed a supplemental motion on the issuance of severance. By judgment entry filed February 22, 2016, the trial court again denied the motion to sever, and denied Wilson's motion to compel confrontation, finding E.C.'s out-of-court statements were admissible as pertaining to medical diagnosis or treatment.

{¶9} A jury trial commenced on February 23, 2016, but the jury could not reach a verdict on any of the counts and a mistrial was declared. Wilson did not object to the trial court's supplemental instruction referred to as a *Howard* charge. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188(1998), paragraph two of the syllabus. Wilson did not object to the declaration of a mistrial because the jury was deadlocked. Thereafter, a different judge was assigned to the case.

{¶10} On May 27, 2016, Wilson reasserted his motion to exclude E.C.'s videotaped interview, claiming it violated his right to confrontation and it did not fit the medical diagnosis or treatment exception to the hearsay rule. Again, the trial court denied the motion.

{¶11}  A second jury trial commenced on June 6, 2016.  The jury found appellant guilty of Counts 1 and 3, and not guilty of Count 2.  The jury also found the offenses were committed in a school safety zone.

{¶12}  On June 24, 2016, Wilson filed a motion for judgment of acquittal and motion for new trial.  By judgment entry filed July 21, 2016, the trial court denied the motions.

{¶13}  By judgment entry filed August 2, 2016, the trial court sentenced Wilson to an aggregate term of eight and one-half years in prison.  This Court affirmed Wilson's convictions and sentence.  *State v. Wilson,* 5th Dist. Delaware No. 16-CAA-08-0035, 2017-Ohio-5724 ["*Wilson, I*"].  The Ohio Supreme Court declined to review Wilson's case. *State v. Wilson,* 151 Ohio St.3d 1511, 2018-Ohio-365, 90 N.E.3d 950.

{¶14}  On October 2, 2017, Wilson filed an application to reopen his direct appeal alleging that his Appellate counsel was ineffective for failing to raise a number of specific arguments relating to trial counsel's alleged deficiencies.  On January 19, 2018, this Court denied Wilson's application to reopen his direct appeal.  On February 21, 2018, the Ohio Supreme Court declined to accept jurisdiction in this matter.  *State v. Wilson,* 152 Ohio St.3d 1467, 2018-Ohio-1795, 97.N.E. 3d 502.

{¶15}  On September 13, 2017, Wilson filed an application for post-conviction DNA testing pursuant to R.C. 2953.72.  Wilson requested testing of "[t]he three school-uniform jumpers that law enforcement seized from the home of alleged victim E.C. on April 9, 2015."

{¶16} In an entry filed April 3, 2018, the trial court denied the application finding that Wilson failed to establish that the requested DNA evidence would be outcome determinative.

*Assignments of Error*

{¶17} "I. THE TRIAL COURT'S SUMMARY DENIAL OF DEFENDANT-APPELLANT'S APPLICATION FOR DNA TESTING WAS AN ABUSE OF DISCRETION."

**Standard of Appellate Review – Application for Post-conviction DNA testing.**

{¶18} In *State v. Buhler,* the Ohio Supreme Court held,

1. A careful, commonsense reading of R.C. 2953.74(C) in pari materia with R.C. 2953.72 and 2953.73 and the remainder of R.C. 2953.74 illustrates the intent of the General Assembly to authorize the trial court to exercise its discretion in how to proceed when ruling on an eligible inmate's application for DNA testing.

2. When an eligible inmate files an application for DNA testing pursuant to R.C. 2953.73, a trial court should exercise its discretion based upon the facts and circumstances presented in the case as to whether it will first determine whether the eligible inmate has demonstrated that the DNA testing would be outcome-determinative, or whether it should order the prosecuting attorney to prepare and file a DNA evidence report pursuant to R.C. 2953.75.

113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E. 2d124, paragraphs 1 and 2 of the syllabus.

**{¶19}** R.C. 2953.72(A)(8) provides that when requesting DNA testing pursuant to R.C. 2953.71 through 2953.81, an eligible offender must submit an acknowledgment form stating that,

> The court of common pleas has the sole *discretion* subject to an appeal as described in this division to determine whether an offender is an eligible offender and whether an eligible offender's application for DNA testing satisfies the acceptance criteria described in division (A)(4) of this section and whether the application should be accepted or rejected, that if the court of common pleas rejects an eligible offender's application, the offender may appeal the rejection, and that no determination otherwise made by the court of common pleas in the exercise of its discretion regarding the eligibility of an offender or regarding post-conviction DNA testing under [sections 2953.71 through 2953.81 of the Revised Code] is reviewable by or appealable to any court.

(Emphasis added; language severed as unconstitutional omitted, see *Noling III*, 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, at ¶ 60); *State v. Noling,* 153 Ohio St.3d 108, 2018-Ohio-795, 101 N.E.3d435, ¶31.  As the Supreme Court has observed,

> The text of R.C. 2953.72(A)(8) specifically notes that three of the trial court's discretionary decisions regarding DNA testing are appealable: (1) whether Noling is an eligible offender, (2) whether Noling's application satisfied the acceptance criteria, and (3) whether Noling's application should have been accepted or rejected.  As a result, appellate courts do not have jurisdiction to hear Noling's claims that appeal discretionary decisions

made by the trial court that do not relate to one of these three specifically listed exceptions.　R.C. 2953.72 (A)(8) does not recognize any limits as to an applicant's right to appeal a court's failure to fulfill a mandatory duty; in fact, the division is entirely silent on that issue.

* * *

Examining the limits explained in R.C. 2953.72(A)(8) and (A)(9) in conjunction, it is clear that an appellate court has jurisdiction over a claim raised by an offender who requests DNA testing if the claim challenges any of the three discretionary decisions specifically listed as appealable in R.C. 2953.72(A)(8) or if the claim is that the trial court failed to fulfill a mandatory duty.　Appellate courts do not have jurisdiction over claims that the trial court made incorrect discretionary decisions—other than the three specifically listed appealable issues—or claims asserting that the trial court performed a mandatory duty but that the manner in which that duty was performed was improper.

*State v. Noling,* 153 Ohio St.3d 108, 2018-Ohio-795, 101 N.E.3d435, ¶32; ¶37.

{¶20} An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; In re *Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No.2006–CA–41, 2006–Ohio–5823, ¶54.

**ISSUE FOR APPEAL**

A. Whether the trial court abused its discretion in denying Wilson's application for post-conviction DNA testing.

*1. R.C. 2953.71.*

**{¶21}** The procedure for reviewing and accepting DNA-test applications is set forth in R.C. 2953.71 through 2953.82. After an eligible inmate submits a DNA-test application, R.C. 2953.73(D) states that the trial court "shall make the determination as to whether the application should be accepted or rejected. * * * The court shall make the determination in accordance with the criteria and procedures set forth in [R.C.] 2953.74 to 2953.81." R.C. 2953.73(D) also requires the trial court to consider the application and all corresponding and pertinent files, records, affidavits, documentary evidence, and all materials regarding the proceedings against defendant, "unless the application and the files and records show [that defendant] is not entitled to DNA testing, in which case the application may be denied." Id. Following its determination, the trial court shall enter a judgment and order that accepts or rejects the application. R.C. 2953.73(D) mandates that the trial court shall state the reasons for the acceptance or rejection, based on the criteria and procedures of R.C. 2953.71 to 2953.81, within the judgment and order.

*2. R.C. 2953.74 bars consideration of Wilson's application.*

R.C. 2953.74(B) states:

**{¶22}** (B) If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:

(1) *The inmate did not have a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested*, the inmate shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, **and,** at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

(2) The inmate had a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the inmate shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

**{¶23}** Wilson's case would fall under Section (B)(1) because the school uniform jumpers did not have a DNA test taken at the trial stage. Notably, the trial court could have used this factor as an alternate ground for rejecting the application because Wilson

cannot meet the requirement that at the time of the trial stage in his case "DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available." *State v. Roberts,* 5th Dist. Guernsey No. 2006-CA-02, 2006-Ohio-5018, ¶30, *appeal not accepted State v. Roberts,* 110 Ohio St.3d 1411, 2006-Ohio-3306, 850 N.E.2d72; *State v. Madden,* 10th Dist. Franklin No. 08AP-172, 2008-Ohio-2653, ¶10. This is not a case in which Wilson is arguing that advances in DNA testing have made it possible to learn information about DNA evidence that could not be detected at his trial. *See, State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d287, ¶29. Wilson could have, but did not, request DNA testing of the school uniform jumpers during his first or his second jury trial.

*3. Wilson did not satisfy all six of the conditions necessary for the trial court to accept his post-conviction DNA application.*

**{¶24}** "A court may accept an R.C. 2953.73 application for DNA testing only if it determines that six conditions apply, two of which are central to this appeal." *State v. Bonnell,* __ Ohio St.3d __, 2018-Ohio-4069, 2018 WL4925642 (Aug. 1, 2018), ¶19. First, the court must find that "the identity of the person who committed the offense was at issue." R.C. 2953.74 (C)(3). And second,

> A trial court may accept a DNA application only if it determines that "if DNA testing is conducted and an exclusion result is obtained, the exclusion result would be outcome determinative." R.C. 2953.74(C)(4). In its current form, the Revised Code defines "outcome determinative" to mean that, had the testing been presented at trial and admitted into evidence, when considered alongside the other evidence in the case, "there is a strong

probability that no reasonable factfinder would have found the offender guilty of [the] offense or, if the offender was sentenced to death relative to that offense, would have found the offender guilty of the aggravating circumstance or circumstances the offender was found guilty of committing and that is or are the basis of that sentence of death." R.C. 2953.71(L).

*Bonnell,* ¶19.

### *a. Identity of the perpetrator was never an issue in Wilson's case.*

**{¶25}** In the case at bar, the minor victims never identified anyone other than Wilson as the person whom had inappropriately touched her. The identity of Wilson was not at issue during trial, rather the issue was whether Wilson had, in fact, committed the crimes of which he was accused. *State v. Madden,* 10th Dist. Franklin No. 08AP-172, 2008-Ohio-2653, ¶11.

**{¶26}** R.C. 2953.74(C) mandates that a court may accept an application for DNA testing only if all six conditions are met.

**{¶27}** Accordingly, Wilson fails the third prong of the (C)(3) criteria. The trial court could have used this factor to deny Wilson's application. Therefore, denial of his application was proper. *State v. Bonnell*, supra. A reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. *State ex rel. McGinty v. Cleveland City School Dist. Bd. Of Educ.,* 81 Ohio St.2d 283, 290, 1998-Ohio-471, 690 N.E. 2d 1273; *State ex rel. Cassels v. Dayton City School Dist. Bd. Of Edn.,* 69 Ohio St.3d 217, 222, 1994-Ohio-92, 631 N.E. 2d 150.

### *b. Testing of the school uniform jumpers would not be outcome determinative.*

**{¶28}** Wilson contends that the trial court erred in its determination that he was not entitled to DNA testing (assuming any materials exist for testing) because the results would not be outcome determinative.

**{¶29}** Wilson submits the affidavit of DNA expert Julie A. Heinig, Ph.D., who opined,

It is my opinion that all three jumpers should have been tested in the area that [E.C.] indicated that she had been touched. Such testing might have had substantial probative value in two respects:

a. If a substantial amount of DNA of F. Leon Wilson is obtained from the pubic area of a jumper, it would be important to test, as a control, other areas of the jumper. If DNA of F. Leon Wilson were not found elsewhere on the same jumper, that fact would have some probative value as evidence of touching in the pubic area.

b. If DNA of F. Leon Wilson is not obtained from the pubic area of any of the jumpers, that fact would have some probative value as indicating a lesser likelihood that the touching occurred as alleged.

**{¶30}** Items of clothing were collected from E.C.'s home on April 9, 2015. 3T. at 412; 487. Five items of clothing that was collected were submitted to the Ohio Bureau of Investigation ["BCI"] on March 2, 2016. 4T. at 615. The school uniform jumpers were not submitted to BCI.

**{¶31}** E.C. and her older sister wear the school uniforms interchangeably. 3T. at 413-414; 488. Both E.C. and her older sister took chess lessons from Wilson 3T. at 413; 488. Neither parent was able to determine which daughter wore the uniforms or on

what particular date any of the uniforms were worn.  3T. at 413-414; 488.  Laundry generally remained in the laundry hamper until the weekend.  3T. at 413.  The laundry hamper contains a cloth bag into which the clothing is placed.  3T. at 412-413; 488.  The parents did not ever wash the hamper liner bag.  Id. Clothing from other family members was in the hamper at the time the officer removed the school uniform jumpers and other items of E.C.'s clothing.  3T. at 412- 413; 489.  BCI can only detect DNA from touch samples with a success rate of 30 percent.  4T. at 630.

{¶32}  On the five items of clothing submitted to BCI, Wilson was excluded on all the items.  In spite of the absence of DNA evidence tying Wilson to the crimes, the jury convicted Wilson.  Accordingly, if the school uniform jumpers were tested for touch DNA and Wilson's DNA was not present this would not strengthen his innocence claim. *Bonnell*, 2018-Ohio-4069, ¶21.

{¶33}  If Wilson's DNA was recovered from the school uniform jumpers, Wilson's own expert concedes that it would be some evidence to support his guilt.

{¶34}  There has been no argument or evidence presented that some individual other than Wilson touched either of the girls.

B.  Conclusion.

{¶35}  Based upon the foregoing, Wilson has failed to demonstrate 1).  That the school uniform jumpers were not tested and at the time of the trial stage in this case, **and** DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available [R.C. 2953.74(B)(1)]; 2).The identity of the perpetrator was at issue during his trial [R.C. 2953.74(C)(3)]; and 3).  Any

of the evidence that he sought to test could be outcome determinative [R.C. 2953.74 (B)(1); (C)(4)].

{¶36} Wilson's sole Assignment of Error is overruled.  The judgment of the Delaware County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur