[Cite as *State v. Jones*, 2025-Ohio-1926.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Andrew J. King, P.J. |
|  | : | Hon. Robert G. Montgomery, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024 CA 00144 |
| MICHAEL D. JONES | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Case No. 2007-CR-0544 |
|---|---|
| JUDGMENT: | Affirmed in part; Reversed in part; Remanded |
| DATE OF JUDGMENT ENTRY: | May 27, 2025 |

APPEARANCES:

For Plaintiff-Appellee

KYLE STONE
Stark County Prosecutor
BY: LISA A. NEMES
Assistant Prosecutor
110 Central Plaza South, Ste. 110
Canton, OH 44702

For Defendant-Appellant

DONALD R. CASTER
OHIO INNOCENCE PROJECT
P.O. Box 210040
Cincinnati, OH 4221

*Popham, J.,*

**{¶1}** Defendant-Appellant Michael Jones ("Jones") appeals from the August 8, 2024 judgment entry of the Stark County Court of Common Pleas denying his application for post-conviction DNA testing.

*Facts and Procedural History*

**{¶2}** A Stark County grand jury indicted Jones on one count of Rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, one count of Kidnapping in violation of R.C. 2905.01 (A)(2) / (4), a felony of the first degree, and two counts of Robbery in violation of R.C. 2911.02(A)(2), felonies of the second degree.

**{¶3}** The matter was tried before a jury on August 28, 2007. The State presented ten witnesses, including both victims. Jones did not present a case-in-chief but, while acknowledging that the crimes were committed, maintained that he was not the perpetrator.

**{¶4}** The jury found Jones guilty on all charges. The trial court sentenced him to a total of 22 years in prison. We affirmed his convictions on direct appeal. *State v. Jones*, 2008-Ohio-5085 (5th Dist.). The Supreme Court of Ohio later denied his motion for a delayed appeal. *State v. Jones*, 2009-Ohio-2511.

**{¶5}** In 2024, Jones filed an application under R.C. 2953.73 for post-conviction DNA testing. He requested that the following items be tested: pieces of a flashlight allegedly used in the first robbery, and the rape kit, oral swabs, clothing, and bicycle handlebar grips connected to the second robbery, rape, and kidnapping.

**{¶6}** On August 8, 2024, the trial court denied the request, finding that Jones had not shown the DNA evidence would be outcome determinative.

*Assignment of Error*

{¶7}    Jones raises a single assignment of error:

{¶8}    I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION FOR POST-CONVICTION DNA TESTING.

ASSIGNMENT OF ERROR I.

{¶9}    A trial court's decision regarding whether post-conviction DNA testing would be outcome determinative is reviewed for an abuse of discretion on appeal. *State v. Scott,* 2022-Ohio-4277, ¶ 12, *citing State v. Buehler*, 2007-Ohio-1246, paragraph one of the syllabus, and *State v. White*, 2008-Ohio-1623, ¶ 45. *See also State v. Bulger*, 2025-Ohio-373, ¶10. A trial court abuses its discretion when it acts unreasonably, makes a legal error, or reaches a conclusion not supported by the evidence. *Tennant v. Gallick*, 2014-Ohio-477, ¶ 35 (9th Dist.); *State v. Firouzmandi*, 2006-Ohio-5823, ¶ 54 (5th Dist.).

{¶10}   R.C. 2953.71 through 2953.81 governs post-conviction DNA testing. Under R.C. 2953.74(B)(2), a court may allow testing when:

> The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

**{¶11}** Additional criteria in R.C. 2953.74(C) include: the evidence must still exist, be in good condition, and have a clear chain of custody. Also, identity must have been disputed at trial, and an exclusion must have had the potential to change the outcome. *State v. Bonnell*, 2018-Ohio-4069, ¶ 19; *State v. Wilson*, 2018-Ohio-5166, ¶ 24 (5th Dist.).

**{¶12}** The trial court may decide whether to assess outcome determinativeness first or to require the prosecution to submit a DNA evidence report pursuant to R.C. 2953.75. *Buehler*, 2007-Ohio-1246, syllabus. Here, the trial court determined that DNA testing would not change the outcome, so no report was needed.

**{¶13}** The Supreme Court of Ohio has clarified that courts must *presume the DNA test excludes the offender*, and then decide whether that exclusion would have changed the result. *Bulger*, 2025-Ohio-373, ¶ 12; *Scott*, 2022-Ohio-4277, ¶ 11; R.C. 2953.74(C)(4). The court's role is not to reweigh the evidence but to ask, considering the exclusion alongside all other admissible evidence, would the jury have found the offender not guilty.

**{¶14}** Evidence pointing to an alternative suspect can weigh heavily in this analysis. *Scott*, ¶ 11. However, courts do not assume that DNA would match someone else or lead to a new suspect. *Scott*, ¶ 9; *State v. Reed*, 2024-Ohio-5412, ¶ 19 (2d Dist.).

*Flashlight Testing*

**{¶15}** Jones requested DNA testing on pieces of the flashlight used in the first robbery. At trial, the State's forensic analyst testified that no DNA was recovered from the flashlight because the sample was too small. 2T. at 278[1]. Jones argues that newer testing methods could now yield results. *See State v. Prade*, 2010-Ohio-1842, ¶ 29.

---

[1] For clarity, the August 2007 jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

**{¶16}** However, the key question is whether a *presumed exclusion* result would create a strong probability that no reasonable fact finder would have found Jones guilty. R.C. 2953.71(L); *Scott*, 2022-Ohio-4277 at ¶ 14.

**{¶17}** The jury already knew that no DNA from the flashlight linked Jones to the crime. They convicted him anyway. Even if a new test now found someone else's DNA, it would not be outcome determinative. The most that could be said is that someone else also touched the flashlight. It would not show who used the flashlight—only that someone else touched it. This result would not create a strong probability of acquittal.

*Sexual Assault kit and additional oral swabs*

**{¶18}** The allegations of rape were based upon the perpetrator compelling the victim to perform fellatio.

**{¶19}** Following the incident on March 23, 2007, the victim was initially transported to Affinity Medical Center, where four oral swabs were collected. She was subsequently taken to Mercy Medical Center, where a rape kit was administered. 1T. at 142, 168-169; 2T. at 285; State's Exhibits 8, 15, 16.

**{¶20}** At trial, the State's forensic analyst testified that no semen was detected in the rape kit samples. She further testified that the oral swabs collected at Affinity Medical Center were inconclusive for the presence of semen. Although there may have been something there, she had an indication of something, the results were insufficient to reach a definitive conclusion. 2T. at 288-290.

**{¶21}** Those samples were later submitted to LabCorp for further analysis. LabCorp reported they could not determine whose DNA was on the swabs because they

were not able to isolate enough male DNA or sufficient quantities in order to perform any further analysis. 2T. at 290, 297.

**{¶22}** Jones argues that, had DNA from another male been discovered and presented at trial, no reasonable jury would have found him guilty.

**{¶23}** The recovery of DNA from a third-party would be outcome determinative, as that term is defined by R.C. 2953.71(L). At trial, the State presented testimony that DNA is difficult to retain in the oral cavity due to the continuous rinsing effect of saliva. 2T. at 290; Appellee's brief at 9. Consequently, any male DNA recovered, whether attributable to Jones or another individual, would, more likely than not, be that of the perpetrator.

**{¶24}** Accordingly, if a male third party's DNA were recovered and considered in conjunction with the other admissible evidence, there is a strong probability that no reasonable fact finder would have found Jones guilty. R.C. 2953.74(B)(3).

**{¶25}** Conversely, the recovery of DNA matching Jones would support the State's theory of guilt. However, the absence of Jones's DNA would not be outcome determinative. The jury was already aware that neither the rape kit nor the oral swabs linked Jones to the offense, yet it convicted him.

**{¶26}** The victim testified that the perpetrator wore a hat pulled down over his face and eyes, along with a long hoodie that concealed most of his body. She was unable to recall any specific design or trim on the hoodie and did not observe anything unusual about the perpetrator's teeth. 1T. at 157–159. She further testified that she saw Jones' photograph in a newspaper article published on March 27, 2007, which identified him as a suspect. However, she did not identify Jones from a photo lineup until April 24, 2007.

*Id.* at 160–162. The presence of a male third party's DNA in the victim's mouth, under the circumstances presented, would tend to exculpate Jones.

{¶27} "Under the current DNA testing scheme, offenders may apply to have their own DNA compared against biological evidence recovered from the victim or the crime scene, for the purpose of scientifically precluding the offender as a 'contributor of biological material from the crime scene or victim in question ...'" *State v. Widmer*, 2013-Ohio-62, ¶ 115 (12th Dist.), citing R.C. 2953.71(G); *see also* R.C. 2953.74(C). "In essence, the DNA testing statutes provide an opportunity for the accused to establish that another individual committed the crime in question." *Id.*

{¶28} Therefore, we conclude that the trial court abused its discretion in determining that there is not a strong probability that no reasonable fact finder would have found Jones guilty, if exculpatory DNA evidence from the sexual assault kit and/or oral swabs had been introduced at trial.

*Victim's clothing*

{¶29} Jones also seeks DNA testing of the work shirt, white tank top and blue jeans collected from the victim following the March 23, 2007 incident.

{¶30} At trial, the State's forensic analyst testified that no blood or semen was discovered on any of the items of clothing. The analyst did test a single pubic hair discovered on the jeans. DNA typing on the root end of that hair conclusively determined that it belonged to a female. 2T. at 280-281.

{¶31} The jury was already aware that no DNA, blood, or semen was recovered from the clothing linking Jones to the crimes, yet it convicted him, nonetheless.

{¶32} Even if subsequent testing were to reveal the presence of another person's DNA on the clothing, such a result would not be outcome determinative. At most, it would suggest that the victim came into contact with another individual at some point while wearing the clothing. That individual could have been a family member, a co-worker, or a member of the public present at the store during her shift. The trial testimony did not establish how long the victim had been wearing the clothing prior to the incident.

{¶33} Thus, even if DNA testing now excluded Jones, that result would not undermine the other evidence presented at trial. It would merely show that the victim had contact with a third party while wearing the clothing, a fact that would not create a strong probability of acquittal.

*Bicycle handlebar grips*

{¶34} Jones also requested DNA testing of the rubber bicycle handlebar grips removed from the bicycle recovered from the property adjacent to the location of the March 23, 2007 incident.

{¶35} At trial, the State's forensic analyst testified that a mixture of DNA from at least two individuals was recovered from the grips. She concluded with a reasonable degree of scientific certainty, that the major DNA profile matched Jones, with a statistical probability of 1 in 386.7 quadrillion. She further testified that the sample attributed to the minor contributor did not contain sufficient DNA to develop a profile. 2T. at 282-284.

{¶36} Even if subsequent testing were to reveal the presence of another person's DNA on the handlebar grips, such a result would not be outcome determinative. At most, it would suggest that someone else came into contact with the bicycle at some point. That person could have been the owner of the bicycle or a person who borrowed it, as Jones

was alleged to have done. Accordingly, such a result would not undermine the other evidence presented at trial. It would merely show that another person had contact with the bicycle, a fact that would not create a strong probability of acquittal.

## Conclusion

{¶37} Upon review of each item of evidence for which Jones seeks post-conviction DNA testing, we conclude that the trial court did not abuse its discretion in denying his request as it pertains to the flashlight, the victim's clothing, and the bicycle handlebar grips. Even presuming an exclusionary result, further testing of these items would not be outcome determinative under R.C. 2953.71(L). The jury was aware that, except for the bicycle handlebar grips, no DNA evidence linked Jones to these items, yet it convicted him based on eyewitness identifications and other corroborating evidence. The presence of DNA from a third party would merely suggest that another individual had contact with these objects at some point and would not undermine the other evidence of guilt presented at trial.

{¶38} However, with respect to the rape kit collected at Mercy Medical Center and the oral swabs obtained at Affinity Medical Center, we find that the trial court abused its discretion in determining that additional testing would not be outcome determinative. Given the nature of the allegations and the potential probative value of recovering a male third party's DNA from the victim's oral cavity, we conclude that a presumed exclusion, when considered in light of all other admissible evidence, would create a strong probability that no reasonable fact finder would have found Jones guilty.

{¶39} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion and the law.

By Popham, J,

King, P.J., and

Montgomery, J., concur