[Cite as *In re D.T.B.*, 2021-Ohio-1023.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| D.T.B. AND M.G.B. | : | Case No. 19CA35 |
| | : | 19CA36 |
| | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| | : | |

_____

**<u>APPEARANCES</u>**:

William H. Fraser, Columbus, Ohio, and Shanna M. Mustard, Chillicothe, Ohio, for Appellant.

Jacqueline L. Kemp, Dublin, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} R.B. ("Appellant") appeals the trial court's judgment that determined her consent to the adoption of her two biological children, D.T.B. and M.G.B., is not required and the court's decision that denied her request for court-appointed counsel.

{¶2} Although Appellant raises four assignments of error, we find her second assignment of error is dispositive. In her second assignment of error, Appellant contends that denying her request for appointed counsel violates her right to equal protection of the law. The Ohio Supreme Court recently agreed with this argument and held that indigent parents in adoption

proceedings have an equal protection right to appointed counsel. *In re Y.E.F.*, --- Ohio St.3d ---, 2020-Ohio-6785, --- N.E.3d ---.

{¶3} Accordingly, we sustain Appellant's second assignment of error. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion. Appellant's remaining assignments of error are moot.

## FACTS

{¶4} Appellant and the children's father divorced in 2014. The father later married J.B. ("Appellee"). A few years later, Appellee filed a petition to adopt her two stepchildren. The petition alleged that Appellant's consent is not required because Appellant has failed without justifiable cause to provide more than de minimis contact with the children and to provide for the children's maintenance and support as required by law for at least one year immediately preceding the filing of the adoption petition. The father consented to the adoption.

{¶5} The trial court set the matter for a consent hearing to be held on September 3, 2019. Moments before the consent hearing was scheduled to begin, Appellant filed a motion that requested the court to appoint counsel to represent her. Appellant additionally asked the court to stay the proceedings

pending the Ohio Supreme Court's decision in *Y.E.F.* Appellant asserted that *Y.E.F.* would be dispositive of her request for appointed counsel.

{¶6} The trial court denied Appellant's motions. The court noted that it initially had set the matter for a July 2, 2019 hearing, and that at that time, Appellant had requested a continuance so that she could seek counsel. The court additionally observed that at an August 20, 2019 status conference, Appellant again stated that she wished to obtain counsel. The court indicated that on both occasions, it had informed Appellant that court-appointed counsel is not available in private adoption proceedings.

{¶7} The court further recognized that Appellant filed her motion for court-appointed counsel and her motion to stay the proceedings less than ten minutes before the consent hearing was scheduled to begin. The court thus denied Appellant's motions and proceeded with the consent hearing.

{¶8} At the consent hearing, Appellant testified that when the parties divorced, the court granted Appellant parenting time with the children every other weekend and each Wednesday from 4 p.m. to 7 p.m. Appellant stated that she exercised her parenting time when the father allowed the visitations and that the last time that she saw the children was on November 6, 2015.

{¶9} Appellant explained that she had attempted to visit the children after November 6, 2015, but when she would arrive at the scheduled time,

neither the father nor the children were home.  Appellant claimed that this process continued until May 6, 2018, when she decided that she no longer could afford the $60 she had to spend in order to travel to the father's house, only to discover that neither the father nor the children were home. Appellant stated that she would text the father to ensure that he and the children would be home, and that she "begged and begged to see [the] children."  Appellant testified that the father did not respond to her texts.

{¶10} Appellant explained that she sent the children birthday cards and money every year since the parties divorced, and that in 2019, she sent the children "flowers and teddy bears and a card."

{¶11} Appellee testified that she started living with the father and the two children in 2016, and that since that time, Appellee never has seen Appellant at the house.  Appellee stated that the father and the children were home during the times Appellant had been scheduled to visit them.  Appellee testified that neither she nor the father tried to prevent Appellant from visiting the children.

{¶12} Appellee disputed Appellant's claim that Appellant sent mail to the children.  Appellee stated that she has not received any cards in the mail from Appellant.

{¶13} The father testified that after the parties divorced, Appellant did not consistently exercise her parenting time rights. He stated that Appellant "would show up late or not show up at all." The father indicated that "probably half the time" Appellant did not appear at all. The father testified that as a result of Appellant's inconsistency, the father started keeping a log. The father stated that the log started on January 7, 2015 and continued through September 2015. In this log, the father documented the dates and times when Appellant had been scheduled to have parenting time with the children and whether Appellant appeared at the scheduled time. The father documented "pickup time, drop off time, whether or not she showed." The father testified that Appellant had "around 22 no-shows" between January and September 2015. The father explained that the log stopped as of September 6, 2015, "because that was the last time [he] had recorded that [Appellant] ever came to see them."

{¶14} The father stated that he did not do anything to interfere with Appellant's visitations and never told Appellant that she was not welcome to visit the children. The father additionally testified that he has not seen any birthday cards in the mail that Appellant claimed to have sent the children.

{¶15} On cross-examination, the father agreed that Appellant had called the house sporadically, but he did not agree that Appellant had called

for the children. Instead, the father stated that Appellant left voicemails in which she was "yelling and screaming" at the father. The father stated that some of the voicemails were difficult to understand and that "a lot of them have nothing to do with the children and they are just attacks at me and my family." The father explained that the "[v]oicemails were inappropriate, accusing [him] of still have feeling[s] for [Appellant], harassing in nature, derogatory comments about [Appellee], grandparents, things like that." The father denied that Appellant left voicemails in which she was "begging" to see the children. The father stated that the voicemails involved "a lot of * * * verbal attacks" and "at the end, sometimes [Appellant] would say, 'babies, momma loves you.' "

{¶16} On September 30, 2019, the court found that Appellant's consent to the adoption is not required. The court noted that the petitioner has the burden of proof to show by clear and convincing evidence that the non-consenting parent failed to communicate or support the child and that "the non-consenting parent has the burden of going forward to show justifiable cause for such failure." The court found clear and convincing evidence that Appellant failed to provide more than de minimis contact with the child. The court determined that Appellant had not visited the children since 2015 and has not spoken with them since May 2017.

{¶17} The court did not find Appellant's claim of justifiable cause credible. The court observed that Appellant did not present any evidence to support her assertion of justifiable cause. The court noted that Appellant did not present any evidence to show that (1) she spent $60 each time she traveled to the father's house, (2) she pursued court action to enforce her visitation rights; (3) she attempted to seek legal counsel or any other assistance in enforcing her right to visit the children; or (4) she attempted to contact the school to inquire about parent-teacher conferences or any extracurricular activities that she could attend. The court determined that Appellant's "lack of effort * * * to enforce her parental rights of companionship does not support her claim of justifiable cause for failing to provide more than de minimis contact with the child[ren]."

{¶18} This appeal followed.

ASSIGNMENTS OF ERROR

{¶19} Appellant raises four assignments of error.

I.      THE TRIAL COURT ERRED IN ITS MEMORANDUM DECISION ON CONSENT BY PLACING THE BURDEN OF PROOF ON R.B. TO SHOW JUSTIFIABLE CAUSE FOR FAILING TO MAINTAIN MORE THAN DE MINIMIS CONTACT.

II.     IN ITS ENTRIES DENYING MOTIONS, THE TRIAL COURT'S HOLDING THAT APPOINTED COUNSEL IS UNAVAILABLE TO INDIGENT ADOPTION RESPONDENTS VIOLATED APPELLANT

MOTHER R.B.'S RIGHT TO EQUAL PROTECTION OF THE LAWS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND TO EQUAL PROTECTION AND BENEFIT GUARANTEED BY ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION.

III.     IN ITS ENTRIES DENYING MOTIONS, THE TRIAL COURT'S DENIAL OF APPELLANT MOTHER R.B.'S REQUEST FOR APPOINTED COUNSEL IN THE CIRCUMSTANCES OF THIS CASE VIOLATED HER RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

IV.     IN ITS ENTRIES DENYING MOTIONS, THE TRIAL COURT'S HOLDING THAT APPOINTED COUNSEL IS UNAVAILABLE TO INDIGENT ADOPTION RESPONSENTS VIOLATED APPELLANT MOTHER R.B.'S RIGHT TO REMEDY BY DUE COURSE OF LAW GUARANTEED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

SECOND ASSIGNMENT OF ERROR

{¶20} We find that Appellant's second assignment of error is dispositive of this appeal and we will thus address the assignments of error out of order. In her second assignment of error, Appellant contends that the decision to deny her request for appointed counsel violates the state and federal constitutional guarantees of equal protection of the law.

{¶21} Appellee asserts that the trial court did not err by denying Appellant's motion for requested counsel. Appellee notes that Appellant did

not file the motion until moments before the consent hearing was scheduled
to begin. Appellee thus argues that the trial court properly denied
Appellant's motion as untimely.

{¶22} Appellee also contends that Appellant's failure "to present any
evidence, argument or proffer of evidence on the record" means that
Appellant forfeited the right to raise the issue on appeal.

{¶23} In response, Appellant cites several cases in which courts have
held that a litigant's last-minute request for counsel merited appellate
consideration. *State v. Mogul*, 11th Dist. Trumbull No. 2003-T-0178, 2006-
Ohio-1873; *Evans v. Evans*, 10th Dist. Franklin Nos. 03AP-12 and 03AP80,
2003-Ohio-6073; *Sabrina J. v. Robbin C.*, 6th Dist. Lucas No. L-00-1374,
2002-Ohio-2691; *Francis v. Francis*, 4th Dist. Lawrence No. 1925, 1990
WL 119250; *In re Watts*, 4th Dist. Washington No. 97CA650, 1999 WL
18564 (Jan. 11, 1999). Appellant requests that we consider her
constitutional claims to appointed counsel based upon their merits and not
upon a procedural technicality. Appellant further argues that her pro se
status during the probate court proceeding and the fundamental right at issue
means that we should afford her leniency.

{¶24} In the interests of justice and given the fundamental right at
stake, we will review Appellant's assignments of error that challenge the

merits of the probate court's decision that she does not have a constitutional right to appointed counsel. *See Y.E.F.* at ¶ 4 (considering parent's constitutional argument regarding right to appointed counsel in adoption case even though parent requested trial court to appoint counsel seven days before consent hearing was scheduled).

Fundamental Right of Natural Parents to Care and Custody of Children

{¶25} "The right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 164, 492 N.E.2d 140 (1986), citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *accord Lassiter v. Durham Cty. Dept. of Social Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (explaining that "a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest"); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28 (stating that "[t]he right to parent one's children is a fundamental right"). Indeed, "the upbringing of children [is] among [the] associational rights th[e United States Supreme] Court has ranked as 'of basic importance in our society.' " *M.L.B. v. S.L.J.*, 519 U.S. 102, 116-17, 117 S.Ct. 555, 136 L.Ed.2d 473

(1996), quoting *Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (citations omitted); *accord In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, 2014 WL 5285371, ¶ 17, citing *M.L.B.*, 519 U.S. at 116 ("A parent's relationship with his or her child is among the 'associational rights' sheltered by the Fourteenth Amendment to the United States Constitution against unwarranted usurpation, disregard, or disrespect by the state"); *Lehr v. Robertson*, 463 U.S. 248, 257-58, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645, 88 L.Ed.2d 645 (1944) (" '[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder' "). " '[T]he interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.' " *M.L.B.*, 519 U.S. at 119, quoting *Santosky*, 455 U.S. at 774 (Rehnquist, J., dissenting). Consequently, the parent-child relationship " 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' " *Lassiter*, 452 U.S. at 27, quoting *Stanley*, 405 U.S. at 651; *M.L.B.*, 519 U.S. at 116 (stating that the parent-child relationship deserves "shelter[] * * * against the State's unwarranted usurpation, disregard, or disrespect").

{¶26} " '[F]ew consequences of judicial action are so grave as the severance of natural family ties.' " *M.L.B.*, 519 U.S. at 119, quoting *Santosky*, 455 U.S. at 787 (Rehnquist, J., dissenting). "[P]arental status termination is 'irretrievabl[y] destructi[ve]' of the most fundamental family relationship" and permanently destroys " 'all legal recognition of the parental relationship.' " *Id.* at 121, 127-28, quoting *Santosky*, 455 U.S. at 753, and *Rivera v. Minnich*, 483 U.S. 574, 580, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987). Thus, " 'state intervention to terminate [a parent-child] relationship * * * must be accomplished by procedures meeting the requisites of the Due Process Clause.' " *Lehr*, 463 U.S. at 258, quoting *Santosky*, 455 U.S. at 752; *accord In re Adoption of Zschach*, 75 Ohio St.3d 648, 653, 665 N.E.2d 1070 (1996) (recognizing that adoption procedures, which terminate a parent's fundamental right, must comply with due process); *In re Adoption of Greer*, 70 Ohio St.3d 293, 298, 638 N.E.2d 999 (1994) (determining that parent facing loss of parental rights through adoption entitled to adequate notice and an opportunity to be heard). Additionally, "decrees forever terminating parental rights [fall] in the category of cases in which the State may not 'bolt the door to equal justice.' " *M.L.B.*, 519 U.S. at 124, quoting *Griffin v. Illinois*, 351 U.S. 12,

24, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (Frankfurter, J., concurring in judgment).

{¶27} Cases involving the permanent termination of an "undeniably important" parent-child bond "demand[ ] * * * close consideration." *Id.* at 116-117. Courts thus should approach parental rights termination cases, which include adoption cases, " 'mindful of the gravity' of the circumstances and the long-term impact on all the concerned parties." *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351, 933 N.E.2d 236, ¶ 6, quoting *M.L.B.*, 519 U.S. at 117; *see Greer*, 70 Ohio St.3d at 298 (recognizing that adoption "terminates all parental rights of a natural parent").

{¶28} With these considerations in mind, we proceed to consider Appellant's arguments that denying her court-appointed counsel in the adoption proceeding violates her right to equal protection under the law.

Equal Protection

{¶29} Appellant first asserts that denying her the right to appointed counsel in this adoption proceeding between a step-parent and a non-consenting biological parent deprives her of the equal protection of the law. Appellant observes that Ohio law gives appointed counsel to indigent parents facing the termination of parental rights in juvenile court proceedings, but that no similar law gives parents facing the termination of

parental rights via an adoption petition in probate court proceedings this same right to court-appointed counsel. Appellant contends that both sets of parents are similarly situated in that their fundamental parental rights are at stake. Appellant alleges that the differing treatment between indigent parents in the two types of proceedings violates the state and federal constitutional guarantees of equal protection of the law.

{¶30} Appellant disputes any notion that equal protection principles do not apply in private adoption proceedings. Appellant asserts that an adoption proceeding involves state action. Appellant points out that even though the state does not initiate an adoption proceeding, the state sanctions an adoption through the actions of the probate court. Appellant contends that this state sanctioning constitutes sufficient state action to render the equal protection principles applicable to adoption proceedings.

{¶31} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." "These two equal protection provisions are functionally equivalent and require the same analysis." *State*

*v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 29, citing

*Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56,

2009-Ohio-1970, 908 N.E.2d 401, ¶ 11.

{¶32} The basic meaning of "equal protection of the laws" is that "all

persons similarly situated should be treated alike." *Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985);

*Lehr*, 463 U.S. at 265 ("The concept of equal justice under law requires the

State to govern impartially").  "Simply stated, the Equal Protection Clauses

require that individuals be treated in a manner similar to others in like

circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-

Ohio-6505, 839 N.E.2d 1, ¶ 6.  The equal protection provisions do not,

however, " 'deny to [the] State the power to treat different classes of persons

in different ways.' " *Eisenstadt v. Baird*, 405 U.S. 438, 446-447, 92 S.Ct.

1029, 31 L.Ed.2d 349 (1972), quoting *Reed v. Reed*, 404 U.S. 71, 75, 92

S.Ct. 251, 30 L.Ed.2d 225 (1971); *accord State v. Noling*, 149 Ohio St.3d

327, 2016-Ohio-8252, ¶ 12, 75 N.E.3d 141.  Instead, the equal protection

provisions prohibit legislation that treats "similar groups differently based on

criteria that are unrelated to the purpose of the law." *Noling* at ¶ 13, citing

*Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389

(1974); *Lehr*, 463 U.S. at 265 ("The sovereign may not draw distinctions

between individuals based solely on differences that are irrelevant to a legitimate governmental objective").

{¶33} In the case at bar, Appellant argues that she, like other parents facing the loss of their parental rights via a probate court adoption proceeding, is similarly situated to parents facing the loss of their parental rights via a juvenile court parental-rights termination proceeding. Appellant contends that the two sets of parents face similar circumstances, i.e., the loss of their fundamental right to a parent-child relationship. Appellant asserts that this shared loss of a fundamental right places the two sets of parents in the same or similar categories for purposes of an equal protection analysis.

{¶34} Recently, the Ohio Supreme Court held in *Y.E.F* that indigent parents are entitled to appointed counsel in adoption proceedings. The court first determined that the necessary state action exists in an adoption proceeding. *Id.* at ¶ 26. The court noted that adoption is a state function that requires government action to effectuate. *Id.*

{¶35} The court next concluded that indigent parents in both adoption proceedings and parental-rights termination proceedings are similarly situated because both types of parents "face the same termination of their fundamental constitutional right to parent their children as a result of judicial action." *Id.* at ¶ 28. The court thus determined that "the Equal Protection

Clause requires equal treatment * * * absent a compelling interest to treat them differently and a statutory mechanism narrowly tailored to address only that interest." *Id.* at ¶ 30.

{¶36} The court found that the state failed to offer a "compelling justification for affording parents facing termination of their parental rights in juvenile court a right to appointed counsel while withholding that benefit from parents facing termination of their parental rights through adoption proceedings in probate court." *Id.* at ¶ 31. The court ultimately held that "indigent parents are entitled to counsel in adoption proceedings in probate court as a matter of equal protection of the law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution." *Id.* at ¶ 33.

{¶37} The court's decision in *Y.E.F.* is dispositive of Appellant's second assignment of error and requires us to reverse the trial court's judgment and remand for further proceedings.

{¶38} Accordingly, based upon the foregoing reasons, we sustain Appellant's second assignment of error.

THIRD AND FOURTH ASSIGNMENTS OF ERROR

{¶39} In her third assignment of error, Appellant alleges that the decision to deny her request for appointed counsel violates the United States

Constitution's guarantee of due process of law.  In her fourth assignment of error, Appellant argues that the court's decision violates the Ohio Constitution's Due Course of Law Clause.

{¶40} In light of our disposition of Appellant's second assignment of error, Appellant's constitutional arguments contained in her third and fourth assignments are moot.  Therefore, we do not address them.  *See* App.R. 12(A)(1)(c).

{¶41} Accordingly, based upon the foregoing reasons, we overrule Appellant's third and fourth assignments of error as moot.

FIRST ASSIGNMENT OF ERROR

{¶42} In her first assignment of error, Appellant asserts that the trial court erred by requiring her to show justifiable cause for failing to maintain more than de minimis contact with the children.  Appellant contends that case law is clear that a non-consenting parent does not bear the burden of proof on the issue of justifiable cause.  Appellant argues that the language that the trial court recited in its decision—that "the nonconsenting parent has the burden of going forward to show justifiable cause for such failure"—shows that the court incorrectly required Appellant to prove that she had justifiable cause for failing to maintain more than de minimis

contact with the children during the year preceding the filing of the adoption petition.

{¶43} Appellant correctly notes that although she bore the burden of production, she did not bear the burden of persuasion. Appellant contends that her burden of production required only that she present a facially justifiable reason for failing to maintain more than de minimis contact with the children, and that once she satisfied her burden of production, the burden shifted to Appellee to establish that Appellant's claimed justification was illusory.

{¶44} Appellant claims that she presented evidence to show that the father "hindered" Appellant from maintaining contact with the children and that this evidence demonstrates that she set forth a facially justifiable reason for failing to maintain more than de minimis contact with the children. Appellant refers to the following evidence to support her assertion that she presented evidence of justifiable cause: (1) Appellant testified that shortly after the parties divorced, the father alienated the children from her; (2) Appellant testified that she had called the children nearly forty times during the year preceding the adoption petition; (3) Appellant stated that she had attempted to visit the children every year until 2018, when she decided that her trips to the father's house were futile; and (4) Appellant testified that she

texted the father to ensure that the father and the children would be present at Appellant's designated visitation time, but the father did not respond.

{¶45} Appellant faults the trial court for requiring her to corroborate her testimony rather than taking Appellant's testimony at face value. Appellant contends that requiring her to corroborate her testimony with extrinsic evidence misallocated the burden of persuasion. Appellant argues that she was not required to present extrinsic evidence to prevail on the issue of justifiable cause, but rather, Appellee was required to persuade the court that Appellant lacked justifiable cause. Appellant asserts that the trial court should have required Appellee to prove that Appellant's claimed "justification was illusory."

{¶46} Appellant additionally contends that even if the trial court had properly allocated the burden of proof, Appellee did not present clear and convincing evidence that Appellant lacked justifiable cause for failing to maintain more than de minimis contact with the children.

{¶47} Appellee does not agree that the trial court incorrectly required Appellant to bear the burden of proving that Appellant had justifiable cause for failing to maintain more than de minimis contact with the children. Appellee instead asserts that Appellant failed to satisfy her burden of producing evidence that would support a finding of justifiable cause.

Appellee contends that Appellant's proffered reasons fail to show that Appellant had justifiable cause for failing to maintain more than de minimis contact with the children during the year preceding the filing of the adoption petition. Appellee claims that Appellant did not present evidence that either the father or Appellee significantly interfered with Appellant's communication efforts with the children or that they significantly discouraged communication.

{¶48} Given our disposition of Appellant's second assignment of error and our decision to reverse and remand the trial court's judgment, we believe that a ruling regarding the trial court's alleged improper allocation of the burden of proof and its factual findings is not appropriate at this time. Instead, our remand requires the trial court to appoint counsel for Appellant and then hold a new consent hearing to determine whether Appellant had justifiable cause for failing to maintain more than de minimis contact with the children. On remand, the trial court will revisit the justifiable cause issue anew, and its decision may render the issues Appellant raises in her first assignment of error moot.

{¶49} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignment of error.

CONCLUSION

{¶50} We sustain Appellant's second assignment of error and reverse and remand the trial court's judgment for further proceedings consistent with this opinion.  We overrule Appellant's remaining assignments as moot.

**JUDGMENT REVERSED AND REMANDED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court – Probate Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., and Wilkin, J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**